UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, and SOUTHWEST IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO<br><br>                    Plaintiffs,<br><br>     v.<br><br>LAWRENCE G. WASDEN, in his official capacity as ATTORNEY GENERAL FOR THE STATE OF IDAHO,<br><br>                    Defendant. | Case No. 1:11-CV-253-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it a motion for preliminary injunction filed by Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO and Southwest Idaho Building and Construction Trades Council, AFL-CIO (Dkt. 2).

Plaintiffs move the Court for a restraining order and injunction barring Attorney General Lawrence Wasden from implementing and enforcing Idaho Senate Bill 1007, enacted as Idaho Code § 44-2012 and known as the "Fairness in Contracting Act." On July 1, 2011, the statute will become effective. The Fairness in Contracting Act is codified as a portion of the "Right to Work Act," which Congress has expressly

exempted from the preemptive effect of federal labor law.  But, Plaintiffs argue, the

Fairness in Contracting Act has nothing to do with the right to work statute, and instead

purports to regulate a form of collective action known as market recovery plans.

Plaintiffs contend that the National Labor Relations Act preempts the Fairness in

Contracting Act and that its implementation and enforcement will cause irreparable harm

to Plaintiffs and the local building trade unions they represent.  Defendant Attorney

General Lawrence G. Wasden opposes the motion.  In addition, the Inland Pacific

Chapter of Associated Builders and Contractors, Inc., with leave of Court, filed an

amicus curiae brief opposing Plaintiffs' motion for a preliminary injunction.

The Court heard oral argument on June 21, 2011, and took the matter under

advisement.  For the reasons set forth below, the Court will grant Plaintiffs' motion for a

preliminary injunction.

## BACKGROUND

Plaintiffs are two building and construction trade councils affiliated with the

Building and Construction Trades Department, AFL-CIO.  Both trade councils are

unincorporated associations comprised of local unions that represent building trade

workers throughout southern Idaho.  *Clay Decl.* ¶ 2, Dkt. 2-2; *Moore Decl*. ¶ 2, Dkt. 2-3.

The trade councils exist for the purpose of advancing the interests of building trade

unions and their members, advancing generally the union sector of the construction

market, and improving working conditions for workers in the building trades.  *Clay Decl.*

¶ 3, Dkt. 2-2; *Moore Decl*. ¶ 3, Dkt. 2-3.

Construction industry workers face unique problems in comparison to most private sector workers represented by unions.  Most laborers, both skilled and unskilled, are employed by a single employer for a substantial period of time.  For this reason, the law does not permit most unions to negotiate a collective bargaining agreement with an employer until the union has demonstrated that it represents a majority of the company's current employees.  29 U.S.C. §159.  In contrast, skilled workers in the construction industry may only be hired for a single construction project.  *Clay Decl.* ¶ 6, Dkt. 2-2. To account for this difference, building and construction industry workers are permitted to negotiate "pre-hire" agreements, which apply to all work performed by that employer within the union's geographic jurisdiction.  29 U.S.C. § 158(f).  The agreements do not guarantee employment for any particular members but instead provide that if a contractor has work that requires the skilled trade a particular local represents, the contractor will hire the workers through a hiring hall operated by the local.  *Clay Decl.* ¶ 6, Dkt. 2-2.

Because workers represented by building trade unions only secure employment when employers that have signed pre-hire agreement are awarded contracts and subcontracts on a project, building trade unions and their members have a vested interest in encouraging signatory employers to aggressively pursue as many public and private construction contracts and subcontracts as possible.  Most large-scale construction contracts are awarded through some form of competitive bidding process.  *Clay Decl.* ¶ 8, Dkt. 2-2.  Prospective bidders evaluate the project specifications and estimate their costs to perform the contract.  These estimates include an assessment of the cost of skilled and unskilled labor needed to complete the project.  *Moore Decl.* ¶ 5, Dkt. 2-3.  To aid

signatory employees in this competitive bidding process, building trade unions and their members, including many in Idaho have created "market recovery programs."

Unions began adopting market recovery programs, also known as "job targeting programs," in the early 1980's to enable signatory employers to compete for "targeted" jobs.  Typically, unions carry out their market recovery programs by selecting projects to target and guaranteeing subsidies to union contractors who submit successful bids.  The purpose of the subsidies is to reduce the unionized contractor's labor costs while allowing the union to maintain its collectively-bargained wage scale on the job and secure additional employment opportunities for its members.  *Clay Decl.* ¶ 3, Dkt. 2-2; *Moore Decl.* ¶ 3, Dkt. 2-3.

All market recovery programs in Idaho are maintained through voluntary contributions, which are deducted from the gross earnings of workers represented by the unions that operate the programs.  *Clay Decl.* ¶ 11, Dkt. 2-2; *Moore Decl.* ¶ 5, Dkt. 2-3; *Oveson Decl.* ¶ 3; *White Decl.* ¶ 3.  In some instances, such contributions are paid directly by union members to the union.  *Moore Decl.* ¶¶ 5, 6.  By allocating the contributions among all members, local building trade unions seek to spread the economic concessions over the entire union membership in an equitable fashion.  *Id.*

The Fairness in Contracting Act aims to prohibit three types of conduct by labor organizations and contractors in the competitive bidding process:

- "No contractor or subcontractor may directly or indirectly receive a wage subsidy, bid supplement or rebate on behalf of its employees, or provide the same to its employees, the source of which is wages, dues or assessments collected by or on

behalf of any labor organization(s), whether or not labeled as dues or
assessments."

- "No labor organization may directly or indirectly pay a wage subsidy or wage
  rebate to its members in order to directly or indirectly subsidize a contractor or
  subcontractor, the source of which is wages, dues or assessments collected by or
  on behalf of its members, whether or not labeled as dues or assessments."

- "It is illegal to use any fund financed by wages collected by or on behalf of any
  labor organization(s), whether or not labeled as dues or assessments, to subsidize
  a contractor or subcontractor doing business in the state of Idaho."

The Act creates two enforcement routes: Misdemeanor liability consisting of fines up to
$100,000 depending upon the number of offenses; and a private right of action for any
"bidder, offeror, contractor, subcontractor or taxpayer . . . to challenge any bid award,
specification, project agreement, controlling document, grant or cooperative agreement"
that violates the statute.

Plaintiffs challenge the Act, arguing that it is preempted by the NLRA, and its
enforcement will cause irreparable harm to Plaintiffs and the local building trade unions
they represent.

## ANALYSIS

The United States Supreme Court, in *Winter v. Natural Resources Defense
Council, Inc.*, 129 S.Ct. 365, 374 (2008), clarified the applicable standard for the
issuance of a preliminary injunction.  A plaintiff seeking a preliminary injunction must
establish:  (1) that it is likely to succeed on the merits; (2) that it is likely to suffer

irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips

in its favor; and (4) that an injunction is in the public interest.  All four elements must be

shown, but a stronger showing of one element may offset a weaker showing of another.

*See*, *e.g., Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052-53 (9th Cir.

2010)

      A preliminary injunction is "an extraordinary remedy never awarded as of right."

*Id.* at 376.  The standard for issuing a preliminary injunction is identical to that for

issuing a temporary restraining order.  *Lockheed Missile & Space Co., Inc. v. Hughes*

*Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

      Here, Plaintiffs have satisfied all four elements necessary for issuance of a

preliminary injunction.

**1.    Success on the merits**

      The issue of Plaintiffs' likelihood of succeeding on the merits turns on whether the

NLRA categorically preempts the Fairness in Contracting Act.  Congress' power to

preempt state law is derived from the Supremacy Clause of the United States

Constitution, U.S. Const., Art. VI. *Gibbons* v. *Ogden*, 9 Wheat. 1 (1824).  Under the

Supremacy Clause, state law may be preempted by federal legislation either by "express

provision, by implication, or by a conflict between federal and state law."  *New York*

*State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645,

654 (1995).  In determining whether federal law preempts state legislation, congressional

purpose must be the ultimate focus.  *Malone v. White Motor Corp.*, 435 U.S. 497, 504

(1978).  Because Plaintiffs make a facial challenge to the Fairness in Contracting Act,

Plaintiffs must show that no set of circumstances exist under which the Act would be valid. *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).

It is well-established that state regulation is presumptively preempted by the NLRA when it concerns conduct that is actually or arguably either protected or prohibited by the NLRA. *Belknap, Inc. v. Hale*, 463 U.S. 491, 498, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983).[1] The general framework for determining whether particular state-law claims are preempted by the NLRA remains that initially established by the Supreme Court in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243-45 (1959).

First, states must yield to the National Labor Relations Board's exclusive jurisdiction over conduct "actually" protected or prohibited under Sections 7 or 8 of the NLRA. *Garmon*, 359 U.S. 243. If the state law regulates conduct actually protected by federal law, preemption follows as a matter of substantive right. *Brown v. Hotel & Restaurant Employees & Bartenders Int'l. Union Local 54*, 468 U.S. 491, 501-503 (1984). Second, "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is

---

[1] The Supreme Court has recognized a second pre-emption principle, which prohibits state and municipal regulation of areas that have been left "to be controlled by the free play of economic forces." see *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 147 (1976). However, Plaintiffs do not argue that it should apply here.

to be averted." *Garmon*, 359 U.S. at 245.  The goal of *Garmon* preemption is to preserve the primary jurisdiction of the NLRB to interpret and enforce the NLRA.

Unlike the "actually protected" preemption rule, which is categorical, the "arguably" protected rule is subject to exception in limited circumstances: (1) the NLRA does not preempt state action that regulates activity of "a merely peripheral concern" to the Act; and (2) the NLRA does not preempt state action "where the regulated conduct touch[s] interests so deeply rooted in local feeling and responsibility," it cannot be merely inferred that Congress intended to deprive states of the power to act. *Id.* at 243-44.

In this case, Plaintiffs argue that the state's attempt to prohibit market recovery programs through enactment of the Fairness in Contracting Act is preempted because such programs are protected by Section 7 of the NLRA.  Section 7 protects employees' rights "to engage in other concerted activities for the purpose of other mutual aid or protection."  With respect to market recovery programs, the NLRB has found that they constitute concerted protected activity under Section 7: "[t]he objectives of the "job targeting program" are to protect employees' jobs and wage scales.  These objectives are protected by Section 7."  *In re Manno Elec., Inc.* 321 NLRB 278, 298 (1996).  *See also In Associated Builders and Contractors, Inc., Golden Gate Chapter,* 331 NLRB 132, 166 L.R.R.M. (BNA) 1086 (2000), *modified by*, 333 N.L.R.B. 955, 171 L.R.R.M. (BNA) 1508 (2001).  Based on this ruling by the Board, the Fairness in Contract Act would be preempted.  *Id.*

But the inquiry does not end there.  Attorney General Wasden acknowledges that the Board has found that the market recovery programs the Idaho legislature seeks to

prohibit are actually protected under the NLRA.  He argues, however, that a certain class of market recovery programs – those that are partially funded by dues exacted from employees working on projects subject to the Davis-Bacon Act, or, federal prevailing wage projects – is only "arguably" protected.  Wasden points to a series of administrative and federal court decisions holding that the Davis-Bacon Act bars wage deductions pursuant to a job targeting programs on public work projects.  *See NLRB v. IBEW Local 48*, 345 F.3d 1049 (9th Cir. 2003) *IBEW Local 48 (Kingston Constructors, Inc.)*, 332 N.L.R.B. 1492, 1502 (2000).

In *IBEW Local 48,* for example, the Ninth Circuit enforced an NLRB order finding a labor organization violated Section 8 of the NLRA by requiring, on threat of employment termination, a member to contribute to a market recovery program when he worked on Davis-Bacon projects.  In the underlying decision, the Board concluded that "payments to support job targeting programs are not 'periodic dues' for purposes of section 8(a)(3) and 8(b)(2) if those payments are based on employment on Davis-Bacon projects, because their forced exaction is 'inimical to public policy.'" *IBEW Local 48 (Kingston Constructors, Inc.)*, 332 N.L.R.B. 1492, 1502 (2000).  After analyzing two other cases, *Building and Trades Department v. Reich*, 40 F.3d 1275 (D.C. Cir. 1994), and *IBEW Local 357 v. Brock*, 68 F.3d 1194 (9th Cir. 1995), which invalidated assessments to job targeting programs under the Davis-Bacon anti-kickback provision, the Ninth Circuit rejected the labor organization's contention that the NLRB, *inter alia*, "unreasonably applied the law." 345 F.3d at 1055-56.

The Court agrees that these cases raise questions of whether all market recovery programs are actually protected under the NLRA.  *See, e.g., IBEW Local 48 in Can-Am Plumbing, Inc. v. NLRB,* 321 F.3d 145 (D.C. Cir. 2003) (finding determination by NLRB that dues unlawfully withheld on Davis-Bacon projects did not taint union's job targeting program was inadequate to support determination that operation of program was protected conduct, and remanding to NLRB to consider further evidence).  Notably, however, for preemption purposes a court need not decide whether the state regulation would be deemed to be prohibited by the NLRA, since it is enough that the state regulation is based is "arguably" prohibited.  As the Court explained *Garmon*, it is for the NLRB, not the courts, to decide whether the particular state regulation falls within the scope of section 7 or 8 of the NLRA:

> At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. ***But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board....***
>
> ******
>
> ***In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction.***

*Garmon*, 359 U.S. at 244-46 (emphasis added).  *See also Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1271 (9th Cir. 1994) (holding that a private party may bring an action in a federal district court seeking injunctive relief on the basis of Garmon preemption for only "arguably" protected or prohibited activity).

Both Wasden and amicus suggest that even if the conduct alleged is arguably protected by the NLRA, this is not a case in which preemption should be applied.  As noted above, the Supreme Court's cases have referred to two circumstances in which state law is not preempted, even if the conduct at issue is arguably protected or prohibited by the NLRA. Those exceptions apply if the alleged conduct is of only "peripheral concern" to the NLRA, or "touches on interests ... deeply rooted in local feeling and responsibility." *Jones*, 460 U.S. at 676 (citing *Garmon*, 359 U.S. at 243-44).

In this case, it is evident that the Court could not characterize the conduct the legislature seeks to regulate with the Fairness in Contract Act as a mere "peripheral concern" to the NLRA because it involves activities that lie at the core of NLRA concerns: union activities seeking to protect employees' jobs and wages.  However, the Court must also consider the contention urged by the amicus that this case falls within the local interest exception.

The Supreme Court has ordinarily applied this exception in cases where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property. *See Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 136 (1976); *Garmon*, 359 U.S. at 247-48; *see, e.g., International Union, United Auto., Aircraft and Agr. Implement Workers of America (UAW-CIO) v. Russell*, 356 U.S. 634 (1958) (upholding state court jurisdiction to entertain action by employee for harm resulting from strikers' threats of violence and exclusion by force). The Supreme Court has extended this exception to

cover acts of trespass, *see Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 190-98 (1978), and certain personal torts, such as intentional infliction of emotional distress, see *Farmer v. United Bhd. of Carpenters, Local 25*, 430 U.S. 290, 304-05 (1977), and malicious libel, *see Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 57-63 (1966).

Amicus has not demonstrated that undermining union-sponsored market recovery programs falls within the category of claims which the Court has determined "touch[s] interests deeply rooted in local feeling and responsibility." *Belknap*, 463 U.S. at 498, 103 S.Ct. at 3177.  Although Amicus claims that "the right-to-work statutes in the Idaho Code provide the requisite 'state interest' to withstand federal preemption," *Amicus Br.* at 40, Amicus has cited no authority supporting its argument that prohibition of market recovery programs is  an area "traditionally subject to state regulation," *Sears*, 436 U.S.at 188.  To the contrary, regulation of union-sponsored market recovery programs is an area of particular concern to the NLRA.

Nor does the Court believe that Congress intended the limited exception to federal preemption carved out in Section 14(b) of the NLRA – which permits states to proscribe agreements that require employees to pay dues or fees to a union as a condition of employment – to allow states to prohibit activity clearly covered by the NLRA because a particular state deems the activity a "local interest."  This argument, taken to its logical end, would allow states to proscribe *any* conduct expressly protected by the NLRA if the state deemed it a matter of local concern.  The exception would swallow the rule.

Even were the Court to conclude that the issue presented is one of particular state concern, the Supreme Court has cautioned that in such circumstances, any state concern must be balanced against the risk that the exercise of state jurisdiction over the tort claim would interfere with the regulatory jurisdiction of the NLRB. *Jones*, 460 U.S. at 676 (whether targeted conduct implicates local interests "involves a sensitive balancing of any harm to the regulatory scheme established by Congress"); *Sears*, 436 U.S. at 188-89, 98 S.Ct. at 1752-53.  As the Court explained in *Sears*:

> The critical inquiry ... is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

436 U.S. at 197.

Here, a state court presented with a claim under the Fairness in Contract Act would first have to decide (1) whether the challenged market recovery program derived funds from Davis-Bacon projects and (2) whether the program in question was nonetheless protected under the NLRA before it could reach the issue of whether the defendant contractor or union had violated the Act. This creates a risk of conflicting rulings from the state court and the Board, and threatens state interference with the NLRB's enforcement of national labor relations policy. See *Jones*, 460 U.S. at 682 (state claim preempted where fundamental element of claim also had to be proved to make out a case under § 8(b) (1) (B) of the NLRA).

Because the conduct the Fairness in Contracting Act seeks to regulate would overlap with NLRB issues, this case is distinguishable from *Sears*.  In *Sears*, the employer filed a trespass action in state court in an effort to end the union's picketing on its property. The Supreme Court rejected the union's claim that the action was preempted, noting that the controversy regarding the location of the picketing was unrelated to the issue Sears might have presented to the Board. To make out a state-law claim of trespass, Sears needed only to prove the location of the Union's picketing. An unfair labor practice charge, on the other hand, would have focused on the objectives of the picketing, an issue "completely unrelated to the simple question whether a trespass had occurred." 436 U.S. at 198.  Thus "permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices." *Id.*

In any case brought under the Fairness in Contracting Act, by contrast, the allegation that a contractor received or a union paid wage subsidies derived from Davis-Bacon projects would be the focus of both an unfair labor practice charge and any state Fairness in Contracting Act claims. The risk of conflicting rulings and interference with Board enforcement of national labor policy is evident.

Having determined that the claim at issue here (1) involves activity that is actually or arguably prohibited by the NLRA; (2) does not involve an issue deeply rooted in local feeling and responsibility; and (3) would risk substantial interference with the jurisdiction of the NLRA were it litigated in the state courts, the Court concludes that Plaintiffs are likely to succeed on their claim that the proposed state law prohibiting market recovery

MEMORANDUM DECISION AND ORDER - 14

programs is preempted.  In reaching this conclusion, the Court rejects Wasden's argument that NLRA primary jurisdiction *never* preempts state regulation until and unless the NLRB General Counsel files a complaint– a conclusion Wasden urges based on statements in *Sears* and the NLRB case, *Loehmann's Plaza,* 305 NLRB 663, 670 (1991).  According to Wasden, because there may be an instance when the NLRB does not file a complaint relating to a market recovery program challenged under the Fairness in Contracting Act, circumstances may exist when the Fairness in Contracting Act is not preempted, and therefore Plaintiffs' facial challenge to the Act must fail.

In *Loehmann's Plaza*, the Board's General Counsel alleged that the respondent used the filing of a state trespass action attacking peaceful union picketing as an instrument of retaliation and coercion against the union. The Board's General Counsel sought to enjoin the lawsuit on the grounds that the lawsuit was preempted by the NLRA. At issue was "whether, and also when, state court lawsuits seeking to enjoin peaceful union picketing or leafleting are preempted by Federal law." *Id.*  In deciding this issue, the Board in *Loehmann's Plaza* looked to the Supreme Court decision in *Sears,* 436 U.S. at 199-207.

The Supreme Court in *Sears* "start[ed] from the premise that the Union's picketing on Sears' property after the request to leave was a continuing trespass in violation of state law." 436 U.S. at 185.  The Court's second premise was that the picketing was both arguably prohibited and arguably protected by federal law. *Id.* at 187.  While acknowledging that courts must generally defer to the exclusive jurisdiction of the NLRB when activity is "arguably" protected or prohibited, the Court found that the state trespass

action was not preempted because the trespass action touched on deeply rooted local interests.  In addition, the *Sears* Court noted that no risk of overlapping jurisdiction between the NLRB and the state court existed because the union never filed an unfair labor practice charge, and therefore the employer could not directly obtain a Board ruling on whether the trespass was a protected activity.  Applying *Sears*, the Board in *Loehmann's Plaza* found that a state court trespass action is not preempted *until the General Counsel issues a complaint*.

A close review of *Sears*, on which the Board in *Loehmann's Plaza* relied, convinces the Court that the so-called modification to the *Garmon* analysis – permitting state jurisdiction over union conduct that is only arguably protected unless the Board becomes involved in the matter – does not apply absent an initial  determination that: (1) the state action touches matters of peripheral concern to the NLRA, or interests that are deeply rooted in local feeling and responsibility; and (2) at least one party is unable to avail itself of the NLRB's processes.  It makes sense that the Board applied the exception in *Loehmann's Plaza* because both *Sears* and *Loehmann's Plaza* involved trespass on private property, and in both cases, it was found that the state trespass action touched on matters deeply rooted in local feeling and responsibility.

In this case, by contrast, this Court had found that the activity the state seeks to prohibit is not rooted in local feeling and responsibility.  Moreover, this Court has found that there exists a significant risk of overlapping jurisdiction between Idaho state courts and the NLRB if the Fairness in Contracting Act becomes effective.  For these reasons,

the modification to *Garmon* preemption espoused in *Loehmann's Plaza* and *Sears* does not apply here.

This conclusion is supported by the Ninth Circuit's decision in *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994). While *Bud Antle* did not involve the exact issues at play here, it remains instructive. In *Bud Antle*, the Ninth Circuit held that "a private party may seek injunctive relief against the enforcement statute scheme on the ground of federal preemption" even absent Board action and despite the fact the state defendant was neither an employer nor employee able to initiate unfair labor practice proceedings. This holding suggests that a federal court need not wait for Board action before finding that regulation of an arguably protected or prohibited activity is preempted.

Time and time again, the Supreme Court has reiterated that the NLRB should serve as the principal arbiter of labor disputes. Thus the Court sees no justification for a court to abandon consideration of the threshold question, which is whether the matter at issue is peripheral to the concerns of the NLRA or a matter of particular local concern. This would require the Court to discard more than half a century of federal policy that places exclusive jurisdiction over issues of national labor relations in the hands of the agency created by Congress to deal with them. Absent more explicit direction from Congress or the Supreme Court, the Court sees no reason to do so.

## 2.    Irreparable Harm

A "possibility" of irreparable harm is insufficient basis for a preliminary injunction; irreparable injury must be "likely" in the absence of an injunction. *Winter*,

129 S.Ct. at 374.   Plaintiffs argue that they will suffer irreparable harm arising from the state's interference with the exercise of an important federal statutory right. *See Arcamuzi v. Continental Air Lines*, *Inc*., 819 F.2d 935, 938-39 (9th Cir. 1987).

In *Arcamuzi*, the pilot's union sought an injunction barring Continental Air Lines from requiring pilots to complete polygraph tests as a condition of their continued employment following a lengthy strike.  *Id*. at 937.  The union alleged that the polygraph requirement was part of a scheme to interfere with the pilots' right to engage in legitimate union activity under the Railway Labor Act. *Id*.   Reversing the district court, the Ninth Circuit held that alleged interference with federally protected union activity constitutes irreparable harm.  *Id.* at 938.

Like the plaintiffs in *Arcamuzi*, Plaintiffs seek an injunction against Wasden to protect their right to engage in job targeting.  And, as described above, the NLRB has found that  market recovery programs employed by building trade unions to secure expanded employment opportunities for their members is protected activity under Section 7 of the NLRA (assuming the programs do not rely on funds derived from Davis-Bacon projects).  Based on the conclusion that market recovery programs are protected under the NLRA, enactment and enforcement of the Fairness in Contracting Act, which seeks to prohibit such programs, would interfere with that federal protected right.

Wasden responds that (1) county prosecutors, not the Attorney General, initiates criminal proceedings and (2) even if he were prosecuting the actions, his understanding that some applications of the Fairness in Contracting Act would be preempted would guide his enforcement efforts.  Based on these two points, Wasden argues that Plaintiffs

have failed to establish a controversy ripe for the Court's adjudication.  Instead, contends Wasden, the appropriate route for Plaintiffs to contest the validity of the Fairness in Contract Act "is to await its attempted enforcement by a county prosecutor under subsection (5) of Idaho Code § 44-2012 or an aggrieved private party under subsection (6)."  *Def.'s Br.* at 18, Dkt. 10.

The Court disagrees.  First, the Ninth Circuit has held that an injunction against the Idaho Attorney General may redress a plaintiff's alleged injuries with regard to exposure to the risk of prosecution created by a criminal statute.  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004).  As the Ninth Circuit explained, "the attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have." *Id.* at 920.  Thus, Wasden's suggestion that he is not the proper defendant is unavailing.

Wasden's second argument – that Plaintiffs' facial challenge is not ripe for adjudication because Plaintiffs have failed to show that Wasden intends to pursue enforcement actions against member labor organizations for Section 7-protected uses of job targeting program funds – also fails.  As explained above, this Court has found that it is likely that Plaintiffs will prove that the statute is preempted whether it is aimed at actually protected activity or arguably protected activity.  Therefore, as Plaintiffs posit, "the Attorney General's 'nuanced' enforcement approach would do nothing to shield the plaintiffs from [the Fairness in Contracting Act's] unlawful effects." *Pls.' Reply Br.* at 4, Dkt. 15.  And as Plaintiffs also point out, even assuming the statute were not facially

invalid and Wasden had a legitimate basis to draw the enforcement lines he articulates, he has not committed himself to enforcing the statute in the manner he suggests.  The fact is that the statute prohibits all types of job targeting programs, whether they derive funds from Davis-Bacon projects or not.

Finally, a party challenging a new law before it becomes effective cannot show a "history of past prosecution or enforcement."  But a party is not required to first "expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune v. Genentech, Inc.,* 549 U.S. 118, 129 (2007).  Rather, a case is ripe when "the very existence of the new" law compels the affected parties to take specific actions and suffer specific harms. *Storman's,* 586 F.3d at 1123.  Plaintiffs have submitted declarations from representatives of two local unions who attest that they will not implement job targeting programs that their members authorized because of the Fairness in Contracting Act. *Oveson Decl.*, ¶¶ 3, 5, Dkt. 2-4; *White Decl.*, ¶ 5, Dkt. 2-5.  They have therefore foregone activity that is at least arguably protected by federal law.  As described by the union representatives, the effect of this forbearance is the loss of work and earning opportunities for the workers represented by those unions.  *See, e.g.*, *Clay Decl.*, ¶¶ 8, 10, Dkt. 2-2; *Moore Decl.*, ¶ 8, Dkt. 2-3.  This harm the union representatives describe satisfies the ripeness requirement.  Therefore, given the facts and argument presented, the Court finds that Plaintiffs have sufficiently demonstrated irreparable harm.

### 3.    Balance of Equities and Public Interest

In considering whether a preliminary injunction or temporary restraining order should issue, courts "must balance the competing claims of injury and must consider the

effect on each party of the granting or withholding of the requested relief." *Winter*, 129
S.Ct. at 376.  Here, the injury to Plaintiffs outweighs any injury to Wasden because the
State and its officials do not have an interest in enforcing a state law that is likely
preempted by federal law.   Conversely, Plaintiffs do have a valid interest in continuing
to engage in conduct actually, or at least, arguably protected by the NLRA.  Wasden does
not specifically refute this contention other than to argue that the Fairness in Contract Act
is not preempted.  However, because the Court had found that the Act will likely be
preempted, this argument no longer holds sway.   Furthermore, preservation of the status
quo will not cause injury to Wasden. To the contrary, any delay will avoid the needless
expenditure of public funds on enforcement while this Court determines the law's
validity.

Lastly, the Court finds that enjoining the enactment and enforcement of the
Fairness in Contracting Act will further the public interest because (1) the public interest
favors enjoining a state law that conflicts with a federal statutory scheme; (2) there is
some evidence that job targeting programs may have resulted in financial savings on state
and local public work projects; and (3) enjoining the state statute protects union
members' right to engage in concerted activity for their mutual aid and protection.  There
being no evidence that a delay in enacting the Act would unduly harm Wasden or the
public, the Court finds that the 'balance of equities' and 'public interest' elements for a
preliminary injunction are also met.

## ORDER

**IT IS ORDERED that** Plaintiffs' motion for preliminary injunction (Dkt. 2) is GRANTED, and Defendant Attorney General Wasden is hereby enjoined from enforcing any of the provisions of Senate Bill 1007.

IT IS FURTHER ORDERED, that the preliminary injunction shall last until the Court can resolve any motion for permanent injunction.  Plaintiffs are directed to contact the Court's Clerk, Sherri O'Larey (208) 334-1473 for the purpose of setting a Case Management Conference, during which the further progress of this case can be discussed and various dates and deadlines can be set.



DATED: July 1, 2011

B. Lynn Winmill
Chief Judge
United States District Court