UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, and SOUTHWEST IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAWRENCE G. WASDEN, in his official capacity as ATTORNEY GENERAL FOR THE STATE OF IDAHO,<br><br>    Defendant. | Case No. 1:11-cv-00253-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Plaintiffs' Motion for Attorney Fees (Dkt. 72). The matters are fully briefed and at issue. Being familiar with the record and having considered the briefing, the Court will grant Plaintiffs' Motion for Attorney Fees (Dkt.72).

## BACKGROUND

Plaintiffs, Idaho Building and Construction Trades Council, AFL-CIO and the Southwest Idaho Building and Construction Trades Council, AFL-CIO (collectively "Trades Councils"), brought suit against Idaho Attorney General Lawrence G. Wasden, challenging two recent amendments to Idaho's Right-to-Work Act. *Compl.*, Dkt. 1.Trade Councils alleged that these amendments—the "Open Access to Work Act," Idaho Code §44-2013, and the "Fairness in Contracting Act," Idaho Code §44-2012—interfered with the rights created by the National Labor Relations Act ("NLRA") and were therefore preempted. *Id.*

Trade Councils moved for a preliminary injunction to prevent the enforcement of the two amendments. *Mot. Prelim. Inj.*, Dkt. 2. Wasden opposed the motion. Inland Pacific Chapter of Associated Builders and Contractors, Inc. ("IPC ABC"), filed an *amicus* brief in support of Wasden's position. The Court heard oral arguments, and issued a preliminary injunction. *Order,* Dkt. 23.

Having succeeded at the preliminary injunction stage, Trade Councils moved to resolve the case on summary judgment, which is where the litigation became more complex. Wasden, as well as *amicus curiae* IPC ABC, opposed the motion. In addition, Wasden also filed a cross-motion for summary judgment, which IPC ABC and the National Right to Work Legal Defense Foundation ("NRTW") supported by filing *amicus* briefs. IPC ABC also sought to intervene. Accordingly, Trade Councils responded – not only to Wasden's opposing briefing but also to the issues raise in the

*amicus* brief opposing the motion, IPC ABC's motion to intervene, and finally, to Wasden's cross-motion for summary judgment and the two associated *amicus* briefs. The Court ultimately granted Trade Councils' summary judgment motion. *Order*, Dkt. 67.

Throughout this litigation, two law firms represented Trade Councils—the Boise law firm of Herzfeld & Piotrowski, LLP, and the Washington, D.C. law firm of Sherman, Dunn, Cohen, Leifer & Yellig, P.C. ("Sherman Dunn"). Trade Councils now seek attorney fees for these firms under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988.

## LEGAL STANDARD

While under the traditional American rule every party bears its own cost of litigation, an exception is created in § 1988 "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckhart*, 461 U.S. 424, 429 (1983). That statute provides for attorney fees in "any action or proceeding to enforce a provision of [section 1983]." 42 U.S.C. § 1988(b).

Under the statute "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1124 (9th Cir. 2008). Awarding attorney fees in these cases is "the rule rather than the exception." *American Broadcasting Companies, Inc. v. Miller*, 550 F.3d 786, 787 (9th Cir. 2008).

Once it is determined that the movant was the prevailing party entitled to fees under the statute, the court must determine the reasonable amount of attorney fees. *Hensley*, 461 U.S. at 432. This determination is done through a "'hybrid approach' under which the district court should first determine the lodestar amount…then, in its discretion, adjust the amount" in light of other considerations. *Lyttle v. Carl*, 382 F.3d 978, 988 (9th Cir. 2004) (edited for clarity).

The lodestar amount is, in turn, calculated by totaling the number of hours reasonably expended in the litigation, and multiplying that total by a reasonable hourly rate. *Id.* While historically courts have considered a number of factors, many of these factors have since been subsumed into the lodestar calculation. *See Perdue v. Kenny A ex rel Winn*, 130 S.Ct. 1662, 1674 (2010); *Mendez*, 540 F.3d 1128-29 (inadequate documentation such as block-billing); *Cunningham v. County of Los Angeles*, 879 F.2d 481 (9th Cir. 1988) (results obtained, and quality of representation). The remaining factors are those that may, in exceptional circumstances, justify adjusting the lodestar amount with a multiplier. *Perdue*, 130 S.Ct. at 1673; *Cunningham*, 879 F.2d at 487-88 (i.e. "Johnson/Kerr factors that have not been subsumed in the lodestar calculation"). But when a factor is properly subsumed within the lodestar calculation, that factor should not be used to adjust the lodestar amount. *Id*.

## ANALYSIS

The Court starts its analysis by noting that Wasden concedes that Trade Councils is the prevailing party under §1988. *Resp. Mot.*at 2, Dkt. 81. Wasden also implicitly

concedes, and the Court finds, that no special circumstances exist in this case, which would take the case outside the general rule that a court should grant attorney fees under §1988. *Id.* Thus, the Court need only determine the reasonable amount of attorney fees using a lodestar calculation and whether exceptional circumstances warrant modifying the lodestar amount.

1.  **Lodestar Calculation of Reasonable Attorney Fees**

Because Wasden raises concerns regarding both steps of the lodestar calculation – the number of the hours billed and the reasonable rate – both will be addressed.

   A.  *Reasonable Hours*

To determine a reasonable number of hours, a court is first "obligated" to consider the results obtained and extent of success "in calculating the lodestar figure." *Morales*, 96 F3d. at 364 (citing *Hensley*, 461 U.S. at 436). The extent of success is considered because a movant should not recover for efforts spent on unfounded claims or unsuccessful endeavors. *See Mendez*, 540 F.3d at 1128-29 (including such hours would constitute "bad faith"). Here, Trade Councils achieved success on all their claims; therefore, the Court need not apportion the hours according to claim or redact hours spent on fruitless efforts.

Beyond the results obtained, a court must also determine if the hours billed were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Hours may be excessive when they indicate "overstaffing of a case" or are supported by "inadequate documentation." *Id.* Especially problematic is "block-billed hours," which prevent a court from meaningful evaluation of the hours billed. *Mendez*, 540 F.3d at 1128-29. Courts,

however, are tasked to consider the reasonableness of the documented hours without resort to blanket measures such as "an across-the-board reduction or rejection of all hours." *Mendez*, 540 F.3d at 1129.

To help in determining whether hours were appropriately billed, it is productive to start with an objective scale that the non-movant will not dispute—the hours Wasden spent on the litigation. The Court's analysis does not end there however. Instead a careful analysis requires going through each stage of the litigation to determine the reasonable hours spent on the litigation.

As with the litigation, the Court will start with the complaint. Wasden agrees that the 16.7 hours spent in drafting was reasonable; however, he reasons that 5.8 spent by other attorneys reviewing the complaint to be unjustified. But a thorough review of the complaint by the parties ensures that all the attorneys are "on the same page," and helps not only their litigants' efforts but helps the court. Thus, the time billed on the complaint seems acceptable.

Next the Court turns to review of hours spent on the preliminary injunction motion. It is here that Wasden raises his main concern—in general the amount of time spent by Trade Councils was far greater than the amount Wasden spent on the same process. While such disparity does raise concerns with the Court, it does not, by itself, determine if the hours billed are justifiable.

To conscientiously determine the hours, the Court must consider the hours in context. For example here, while Piotrowski "devoted substantial time" to researching

federal preemption, he did not include these hours in the amount billed because they were spent in his "efforts to dissuade the Idaho Legislature from passing the [challenged] bills." *Piotrowski Aff.* ¶ 9 Dkt. 72-3. Wasden, as attorney general, likely also had reviewed the bill prior to the litigation, either by drafting or by reviewing the legality of the bills. However, the Washington D.C. attorneys—Yellig, Bor, and Aguilar—did not have a similar opportunity to prepare.

Because Yellig, Bor and Aguil did not have this "prep-work" done prior to the litigation, they would understandably need some time to get up to speed on the specifics of the Idaho bills. Using the hours spent by Wasden as a basis of comparison, it seems appropriate to allow the Washington attorneys time to become similarly familiar with the particular of the Idaho bills. Thus, the Court need not reduce the hours as Wasden suggests.

This brings the Court to the summary judgment motion and cross motions to determine whether reasonable time was spent on these motions. It is at this stage that Wasden seeks the greatest reduction in hours. He contends that excessive time was spent briefing the motions. Trade Councils accordingly counters that the increased time was necessary because of the additional issues raised in the multiple *amicus* briefs. Review of the hours reveals that the bulk of summary judgment briefing was done by the Washington attorneys, with each of the three spending approximately the same amount of time on the motions as Wasden did. Considering the additional issues raised by *amicus*

briefs, it seems reasonable that additional time was needed to brief the issues, and therefore the Court need not reduce the hours spent addressing summary judgment.

Finally, Wasden finds fault with the amount of time spent opposing the motion to intervene. It appears to Wasden that excessive time was spent for "a straightforward analysis of a commonly-litigated procedural issue." *Resp. Mem.* at 9, Dkt. 81. Rather, to Wasden, it seems the "motion was used as an opportunity for Attorney Aguilar to acquaint herself with [the intervention] standards." *Id.* While Aguilar undoubtedly spent some time familiarizing herself the standards and case law, the Court does not see Aguilar's efforts as merely "educational." Rather, as with any young attorney, a small amount of familiarization is subsumed in a lower billing rate. Ultimately here, Wasden's argument is more aptly directed at Aguillar's billing rate, not at the hours billed.

Accounting for arithmetic errors made by counsel, the Court comes to the following totals for reasonable hours billed: Yellig, 246.3; Bor, 187.9; Aguilar, 218.2; Piotrowski, 137.9; Herzfeld, 2.2; Durand, .5.

### B.     *Reasonable Rate*

After tallying the number of hours the litigation reasonably required, the lodestar method requires evaluating the reasonableness of the rates charged. *See Hensley*, 461 U.S. at 433. Paramount in determining a reasonable rate is the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The reasonable rate is measured against the objective scale of "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Stevedoring Services of Am., Inc. v. Dir.,*

*Office of Workers Comp. Programs*, 445 F. App'x 912, 913 (9th Cir. 2011) (citation omitted).

Here, Trade Councils derived an hourly rate by reviewing this Court's past awards. Citing prior cases, Trade Councils arrives at an hourly rate for each attorney based on their respective experience: $400 for Terry R. Yellig with 40 years' experience; $350 for Victoria L. Bor with 31 years' experience; $175 for Esmeralda Aguilar, a second year associate; $250 for James M. Piotrowski with 16 years' experience; $250.00 for Alan Herzfeld with 29 years' experience; and $185.00 for Marty Durand, a longtime associate.

While Wasden attempts to distinguish the Court's prior decision on the grounds that the opposing party did not object to the hourly rate in many of those cases, this actually undermines Wasden's argument. The fact that the hourly rate went uncontested supports the reasonableness of the rate; otherwise, it seems that the rates would have been contested if they were unreasonable when compared to the market.

Finally, the Court should note that Wasden would like an hourly rate capped at $250. Wasden reasons that Piotrowski and Herzfeld were competent local counsel so there was no need for the guidance of the experienced Yellig and Bor. While the Court fully agrees that both Piotrowski and Herzfeld are exceptional counsel, the Court must confine itself to an analysis guided by objective factors. And, as already discussed, the Court in prior cases has found the rates Yellig and Bor seek to be on par to the rates

charged by similarly experienced attorneys in the Boise area. The hourly rates are thus objectively reasonable.

In summary the rates are objectively reasonable and no adjustment is necessary.

### C.  *Total Lodestar Amount*

Taking the reasonable hours and multiplying it by a reasonable rate, the Court determines that Trade Councils attorney fees are $237,587.50.

### 2.  **Discretionary Adjustment for Other Factors**

After determining the lodestar amount, a court may, in its discretion, adjust the amount up or down. However, the lodestar amount is a "presumptively reasonable" fee amount. *Mendez*, 540 F.3d at 1129; *Heitman v. Pope*, 4:11-cv-00080-BLW (D.Idaho Feb. 1, 2012). "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham*, 879 F.2d at 488. Any modifier "must be supported by evidence in the record demonstrating why such a deviation…is appropriate," *id.*, such as a showing at trial that the community market value "does not adequately measure the attorney's true market value." *Perdue*, 130 S.Ct. at 1674. Other reasons include when the litigation required extraordinary outlay of expenses, was exceptionally protracted, or required an exceptional delay in payment of fees. *Id.*

In their motion, Trade Councils seeks a "bonus of 25 percent" because Trade Councils "received a favorable ruling on all issues raised." *Mot. Att'y Fees* at 3, Dkt. 72, *Mem. Supp. Mot.* at 11, Dkt. 72-1. Rather than providing details as to why such an

enhancement should be given, Trade Councils conclusorily invokes its "exceptional success" as a justification. Later, when challenged, Trade Councils opines that such a bonus is justified because it would increase the total compensation to a standard commensurate with legal fees in the Washington D.C. area, where Yelling and Bor are located.

These arguments, however, do not fit with Ninth Circuit precedent which emphasizes that "results obtained" is "now subsumed within the initial calculation of the lodestar amount." *Cunningham*, 879 F.3d at 486. Additionally, the "community" hourly rate is considered in determining a reasonable hourly rate. *See e.g. Blum*, 465 U.S. at 895; *Mendez*, 540 F.3d at 1129. Because both facts are subsumed within the initial lodestar calculation, it is inappropriate to allow a 25% bonus without evidence that the litigation was in some other way "exceptional," i.e. outside the norm. Thus, the Court declines Trade Councils' offer to willingly accept a 25% bonus.

## ORDER

**IT IS ORDERED that** Plaintiffs' Motion for Attorney Fees (Dkt. 72) is **GRANTED.**

DATED: April 16, 2012

B. Lynn Winmill
Chief Judge
United States District Court