James M. Piotrowski
Alan Herzfeld
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9200
Email: JPiotrowski@idunionlaw.com
Email: AHerzfeld@idunionlaw.com
Email: MDurand@idunionlaw.com

Terry R. Yellig
Victoria L. Bor
SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 Seventh St., N.W., Suite 1000
Washington, D.C. 20001
Telephone: (202) 785-9300
Facsimile: (202) 775-1950
Email: yellig@shermandunn.com
Email: bor@shermandunn.com

*Attorneys for Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO, and Southwest Idaho Building and Construction Trades Council, AFL-CIO*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, and SOUTHWEST IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, | ) ) ) ) ) ) | Case No. 1:11-CV-253-BLW |
| Plaintiffs, | ) ) ) | FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | ) ) | |
| LAWRENCE G. WASDEN, in his official capacity as ATTORNEY GENERAL FOR THE STATE OF IDAHO, TIM MASON, in his official capacity as ADMINISTRATOR OF THE DIVISION OF PUBLIC WORKS, and THE CITY OF BOISE, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

1.      Plaintiffs seek a Declaratory Judgment under 28 U.S.C.  §§ 2201 and 2202 that Idaho Senate Bill 1007, which enacted Idaho Code § 44-2012 known as the "Fairness in Contracting Act" (referred to herein as the  "Anti-Job Targeting Act"), and Idaho Senate Bill 1006, which enacted Idaho Code § 44-2013, known as the "Open Access to Work Act" (referred to herein as the  "Anti-PLA Act"), attached hereto as Exhibit A and Exhibit B, respectively, conflict with  the rights of private sector employees under the National Labor Relations Act, as amended, 29 U.S.C.  § 151 *et seq.* ("NLRA") and, therefore, each statute is preempted by operation of the NLRA and the Supremacy Clause of the United States Constitution (Article V, Clause 2), and directly violates rights of private sector employees that are authorized and protected under the NLRA; and a Permanent Injunction prohibiting enforcement of each statute.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1337. This action arises under the Supremacy Clause of the United States Constitution (Article V, Clause 2), the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the NLRA.

3.      Venue is proper under 28 U.S.C. § 1391(b) because the Defendants reside in this judicial district and the events and omissions giving rise to the claims occurred within this judicial district.

4.      Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO, and Southwest Idaho Building and Construction Trades Council, AFL-CIO, are unincorporated associations composed of labor organizations, as defined in § 152(5) of the NLRA, 29 U.S.C. § 152(5), of which building and construction employees are members, that make agreements with employers applicable to employees engaged, or who upon their employment will be engaged in the building and construction industry.

5.      Defendant Lawrence G. Wasden, in his official capacity as the Attorney General of the State of Idaho, has a duty to investigate complaints of violation or threatened violation of the Idaho Right-to-Work Act, Idaho Code § 44-2001 *et seq.*, which includes the Anti-PLA Act and the Anti-Job Targeting Act, and to prosecute all persons violating any of its provisions, and to take all means at his command to ensure its effective enforcement pursuant to Idaho Code §44-2009.

6.      Defendant Tim Mason, in his official capacity as Administrator of the Division of Public Works, Department of Administration,  is responsible for giving effect to the Anti-PLA Act, because he is authorized and empowered  to provide or secure all plans and bid specifications for construction, alteration and repair of public works undertaken by the State of Idaho in a manner that complies with relevant state laws applicable to procurement; he is required by law to follow the procedure set forth in state law in soliciting bids and awarding contracts; and he is responsible for ensuring that the bid specifications and other procurement documents issued by the Division of Public Works and the contracts awarded for construction, alteration, and repair of public works comply with state laws applicable to procurement, including the Anti-PLA Act.

7.      Pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs name Defendant Mason as the representative of a Defendant Class composed of all officials of the State of Idaho who, in their official capacity, are responsible for approving and/or issuing bid documents, specifications, project agreements or other controlling documents for a public works construction contract and are therefore bound by the Anti-PLA Act.

8.      Defendant City of Boise is constituted as a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded,

have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and State of Idaho. Defendant City of Boise is joined as an indispensable party under Fed. R. Civ. P. 19(a)(1)(A) because in its absence complete relief cannot be accorded among the other parties.

9.     Pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs name the City of Boise, Idaho as the representative of a Defendant Class composed of all local government entities and other political subdivisions of the State of Idaho that approve and/or issue bid documents, specifications, project agreements or other controlling documents for public works construction contracts and are therefore bound by the Anti-PLA Act. The City of Boise and all other local government entities and political subdivisions of the State of Idaho in the Defendant Class are joined as indispensable parties under Fed. R. Civ. P. 19(a)(1)(A) because in their absence complete relief cannot be accorded among the other parties.

10.     The "Anti-Job Targeting Act" applies to contractors, subcontractors, labor organizations and their members, and the "Anti-PLA Act" applies to contractors, subcontractors, material suppliers, carriers, labor organizations and their members, all of which are subject to the NLRA.

## FIRST CAUSE OF ACTION

### (The "Anti-Job Targeting Act" is preempted under the Supremacy Clause)

11.     Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1 –10.

12.     On March 3, 2011, the Governor of Idaho signed into law the "Anti-Job Targeting Act," which will become effective on July 1, 2011.

13.     On its face, the "Anti-Job Targeting Act" will: (a) prohibit contractors and subcontractors in Idaho from receiving either directly or indirectly a wage subsidy "the source of which is wages, dues or assessments collected by or on behalf of any labor organization, whether or not labeled as dues or assessments," § 44-2012(3); and (b) prohibit labor organizations from paying a wage subsidy or wage rebate, the source of which is wages, dues or assessments collected by or on behalf of its members, whether labeled as dues or assessments, to its members in order to directly or indirectly subsidize a contractor or subcontractor, § 44-2012(2); as well as (c) make it illegal to use any funds financed by wages collected by or on behalf of any labor organization to subsidize a contractor or subcontractor doing business in the state of Idaho, § 44-2012(4);   and (d) subject contractors, subcontractors and labor organizations to fines for violations of these provisions, § 44-2012(5). Section 44-2012(6) confers standing on any interested party, as defined therein, to challenge any bid award, specification, project agreement, controlling document, grant or cooperative agreement in violation of the provisions of the statute, and makes such interested party eligible for an award of costs and attorneys' fees in the event that such interested party prevails.

14.     Job targeting programs began in the early 1980s as a means of enabling union contractors to compete for "targeted" jobs by providing wage subsidies to help reduce the unionized contractor's labor costs, while securing additional employment opportunities for workers represented by the union at the collectively-bargained wage rate.

15.     Most, but not all, job targeting programs, including all those in Idaho, are maintained through voluntary contributions by workers represented by the unions that operate job targeting programs, which are deducted from their gross earnings.

16.     These contributions are remitted to the respective unions pursuant to dues check-off clauses in their collective bargaining agreements with their unionized contractors. The basic premise of these programs is that local building trades unions are able to provide tangible assistance to unionized contractors competing for selected contracts and subcontracts and to spread the economic concessions over the union's entire membership in an equitable fashion.

17.     Section 7 of the NLRA, 29 U.S.C. § 157, provides in part that "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities."

18.     The National Labor Relations Board ("NLRB") has repeatedly held that a job targeting program is protected concerted activity under Section 7 of the NLRA, because the objective of such programs is "to protect employees' jobs and wage scales."

19.     State regulation infringing plaintiffs' right to operate job targeting programs in Idaho directly conflicts with federal law, inasmuch as the NLRB has held that job targeting programs are *actually* protected by the NLRA.

20.     Therefore, the "Anti-Job Targeting Act" is preempted under the Supremacy Clause of the United States Constitution.

## <u>SECOND CAUSE OF ACTION</u>

**(The "Anti-Job Targeting Act" Violates Plaintiffs' Rights under the NLRA)**

21.     Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1 – 20.

22.     The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides a federal remedy for state interference with rights protected under the NLRA.

23.     The "Anti-Job Targeting Act" is state action that will interfere with plaintiffs' right to operate job targeting programs in Idaho, which is concerted activity that is *actually* protected by the NLRA.

24.     Therefore, the "Anti-Job Targeting Act" violates plaintiffs' right under the NLRA to participate in protected concerted activity.

## THIRD CAUSE OF ACTION

**(The "Anti-PLA Act" is preempted under the Supremacy Clause)**

25.     Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1 – 24.

26.     On March 3, 2011, the Governor of Idaho signed into law the "Anti-PLA Act," which will become effective on July 1, 2011.

27.     The "Anti-PLA Act," will prohibit the State of Idaho and its political subdivisions from requiring that contractors, subcontractors, material suppliers or carriers engaged in the construction, alteration, equipping, furnishing, maintenance, repair or improvement of public works to execute or otherwise become a party to any project labor agreement, collective bargaining agreement, prehire agreement or any other agreement with employees, their representatives or any labor organization as a condition of bidding, negotiation, being awarded or performing work on a public works project.

28.     A "prehire" agreement is a collective bargaining agreement negotiated before the start of a construction project, usually before employees are hired.

29.     Section 8(f) of the NLRA, 29 U.S.C. §158(f), specifically and unequivocally authorizes the use of prehire agreements in the building and construction industry.

30.     Section 8(e) of the NLRA, 29 U.S.C. §158(e), expressly authorizes project labor agreements to include contracting and subcontracting agreements whereby an employer agrees to contract and/or subcontract work only to an employer who is signatory to, or will abide by, the project labor agreement.

31.     Taken together, Sections 8(e) and (f) of the NLRA validate the practice – long followed by owners and managers of large and complex construction projects – of adopting project labor agreements as a means of systemizing the terms and conditions of employment that will prevail throughout the length of a construction project.

32.     Project labor agreements are typically multi-craft prehire agreements negotiated between building and construction trades unions, like the plaintiff labor organizations, and owners, contractors, and/or construction managers, to govern labor relations and terms and conditions of employment on an entire construction project.

33.     Project labor agreements are often negotiated to govern large, complex construction projects, including many publicly-funded public works projects.

34.     By requiring all contractors to be bound by a single labor contract, a  project labor agreement ensures that work rules and conditions on a construction project (*e.g.*, shift schedules, break times, travel times, holidays, etc.) are standardized, thus eliminating the numerous conflicting practices of the individual contractors.

35.     Typically, project labor agreements provide comprehensive no-strike guarantees for the life of the project, providing insurance against delays and disruptions that may otherwise be caused by lawful strikes and picketing activity.

36.     Project labor agreements also typically protect against lockouts by employers operating on the site.

37.     Many project labor agreements establish mechanisms for recruiting minority contractors, for hiring and training women and minority workers, and for accomplishing other objectives to serve the needs of the community in which the project is located.

38.     Project labor agreements have been used on private and public projects since at least 1938, and have been used on a wide variety of public works projects including construction projects at the Idaho National Laboratory, the Grand Coulee Dam in Washington State, NASA's construction at Cape Canaveral, Florida, the cleanup of Boston Harbor, the Lawrence Livermore National Laboratory's National Ignition Facility in California, the Nevada Test Site Facility, the Southern Nevada Water Authority's Treatment and Transmission Facility, and numerous airport projects, including airports in San Francisco, Seattle-Tacoma, San Jose, and Los Angeles.

39.     By its terms, the "Ant-PLA Act" prohibits the State of Idaho, its political subdivisions and their managers and contractors from determining, on a case-by-case basis, that it would be in their best interests to utilize project labor agreements on future public works projects, thereby interfering with the right Section 7 of the NLRA grants to employees in the construction industry to seek negotiation of project labor agreements through their bargaining representatives, in direct conflict with Sections 8(e) and 8(f) of the NLRA.

40.     Congress also intended to leave unrestricted by any governmental regulation and subject to the free play of economic forces the freedom of construction owners, managers, contractors and labor organizations to negotiate project labor agreements and to use lawful means at their disposal to reach such agreements.

41.     The prohibition in the "Anti-PLA Act" against employees in the construction industry seeking to negotiate and implement project labor agreements through their bargaining representatives for use on public works projects in the State of Idaho also

constitutes impermissible state interference with the "free play of economic forces" that Congress intended to govern construction industry labor relations.

42.     Therefore, the "Anti-PLA Act" is preempted under the Supremacy Clause of the United States Constitution because it directly conflicts with plaintiffs' rights under Sections 7, 8(e) and 8(f) of the NLRA, and also interferes with the "free play of economic forces" that Congress intended to govern construction industry labor relations.

## FOURTH CAUSE OF ACTION

**(The "Anti-PLA Act" Violates Plaintiffs' Rights under the NLRA)**

43.     Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1 – 42.

44.     The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides a federal remedy for state interference with rights protected under the NLRA.

45.     The "Anti-PLA Act" is state action that will interfere with plaintiffs' right under Sections 7, 8(e), and 8(f) of the NLRA to negotiate project labor agreements on behalf of their members with the State of Idaho, its political subdivisions, managers and contractors.

46.     The "Anti-PLA Act" is also state action that will interfere with plaintiffs' right to negotiate project labor agreements with the State of Idaho, its political subdivisions, managers and contractors free of state interference with the "free play of economic forces" that Congress intended to govern construction industry labor relations.

47.     Therefore, the "Anti-PLA Act" violates plaintiffs' right under the NLRA to negotiate project labor agreements with the State of Idaho, its political subdivisions, managers and contractors under Sections 7, 8(e), and 8(f) of the NLRA free of state interference with the "free play of economic forces" that Congress intended to govern construction industry labor relations.

**WHEREFORE**, plaintiffs respectfully request this Court:

1. To issue a declaration that the "Fairness in Contracting Act" (referred to herein as the "Anti-Job Targeting Act") is preempted by operation of the Supremacy Clause of the United States Constitution (Article V, Clause 2) and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, and violates plaintiffs' right under the National Labor Relations Act to participate in protected concerted activity;

2. To issue a declaration that the "Open Access to Work Act" is preempted by operation of the Supremacy Clause of the United States Constitution (Article V, Clause 2) and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, and violates plaintiffs' rights under Sections 7, 8(e) and 8(f) of the National Labor Relations Act and also interferes with the "free play of economic forces" that Congress intended to govern construction industry labor relations;

3. To enjoin permanently enforcement of the "Fairness in Contracting Act" (referred to herein as the "Anti-Job Targeting Act") and direct defendants to take whatever action necessary and appropriate to preclude state courts from reaching inconsistent decisions under the Act;

4. To enjoin permanently enforcement of the "Open Access to Work Act (referred to herein as the "Anti-PLA Act") and direct defendants to take whatever action necessary and appropriate to preclude state courts from reaching inconsistent decisions under the Act;

5. To award plaintiffs their costs and attorney fees pursuant to law; and

6.      To grant such other and further relief as the Court may deem proper.

Respectfully submitted,


Dated: October 7, 2013                    HERZFELD & PIOTROWSKI, LLP



/s/James M. Piotrowski_____
James M. Piotrowski
Alan Herzfeld
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin Street
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9200
Email: jpiotrowski@idunionlaw.com
Email: aherzfeld@idunionlaw.com
Email: marty@idunionlaw.com

Terry R. Yellig
Victoria L. Bor
Esmeralda Aguilar
SHERMAN, DUNN, COHEN, LEIFER & YELLIG
900 Seventh St., N.W., Suite 1000
Washington, D.C. 20001
Telephone: (202) 785-9300
Facsimile: (202) 775-1950
Email: yellig@shermandunn.com
Email: bor@shermandunn.com
Email: aguilar@shermandunn.com

*Attorneys for Plaintiffs Idaho Building and
Construction Trades Council, AFL-CIO, and Southwest
Idaho Building and Construction Trades Council, AFL-
CIO*

## CERTIFICATE OF SERVICE

I certify that I have caused a true and correct copy of the foregoing to be served upon the individuals identified below via CM/ECF filing:

Clay Smith                                    clay.smith@ag.idaho.gov
Deputy Attorney General

Judd H. Lees                                  jlees@williamskastner.com
Williams, Kastner & Gibbs, PLLC

Gregory Dickison                              gdickison@dickisonlawfirm.com
Dickison Law Office


This 7th day of October, 2013


                    /s/
        _____

        James M. Piotrowski