James M. Piotrowski
Alan Herzfeld
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin Street
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9200
Email: JPiotrowski@idunionlaw.com
Email: AHerzfeld@idunionlaw.com
Email: MDurand@idunionlaw.com

Terry R. Yellig
Victoria L. Bor
Esmeralda Aguilar
SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 Seventh St., N.W.
Suite 1000
Washington, D.C. 20001
Telephone: (202) 785-9300
Facsimile: (202) 775-1950
Email: yellig@shermandunn.com
Email: bor@shermandunn.com
Email: aguilar@shermandunn.com

*Attorneys for Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO, and Southwest Idaho Building and Construction Trades Council, AFL-CIO*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, et al., | ) )<br>) Case No. 1:11-CV-253-BLW |
| Plaintiffs, | ) ) |
| v. | ) MEMORANDUM IN RESPONSE<br>) TO DEFENDANTS' OCTOBER 23,<br>) 2013 MOTION TO DISMISS |
| LAWRENCE WASDEN, et al., | ) FOR LACK OF SUBJECT<br>) MATTER JURISDICTION |
| Defendants. | ) ) |

**INTRODUCTION**

This case is currently before this Court on a limited remand from the U.S. Court of Appeals for the Ninth Circuit.  In previous proceedings, this Court issued a Memorandum Decision and Order, finding, *inter alia*, the "Open Access to Work Act" ("OAA"), Idaho Code ("I.C.") § 44-2013, is preempted by the National Labor Relations Act ("NLRA").  (Dkt. 67 at 24, 26.)  The challenged OAA barred the State of Idaho and all political subdivisions in the State from including project labor agreements ("PLAs") in bid specifications and contract documents for their public works projects.  The Idaho Legislature had codified the 2011 OAA in the State's "Right-to-Work Act" ("RTW Act"), I.C. § 44-2001 *et seq*.  While the Court's Decision was pending on appeal before the Ninth Circuit in 2012, the Legislature passed a substantially identical statute, but this time codified it in the State's public contracting laws.  *See* 2012 Idaho Sess. Laws ch. 312 § 3, codified at I.C. § 67-2809 ("2012 Act").

The Legislature also amended the original 2011 OAA to remove certain enforcement powers the Act previously entrusted to the Attorney General.  Based on those amendments, the Attorney General argued to the Ninth Circuit that he now lacks sufficient contacts with the OAA to qualify as a proper defendant under the *Ex parte Young* exception to Eleventh Amendment immunity for state government officials, and that the appeal should therefore be dismissed because it is no longer justiciable. (Appellate Case No. 12-35051 ("App. Ct."), Dkt. 13 at 23-28.)

Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO, and Southern Idaho Building and Construction Trades Council, AFL-CIO ("Trades Councils") disagree that the Attorney General is no longer a proper defendant.  However, to ensure final adjudication of this matter, the Trades Councils secured from this Court an indicative order stating that, if they

were to move to amend the complaint to add Tim Mason, Administrator of the Idaho Division of

Public Works, as a defendant, the motion would raise substantial issues.  (Dkt. 95 at 2, 6.)

In response to this Court's indicative order, the Ninth Circuit remanded the OAA

challenge

> for the limited purposes of: 1) allowing the Councils to amend their complaint to
> join additional defendant(s); 2) allowing both parties to supplement the record
> with any information that may bear on the justiciability of the OAA claim under
> the Eleventh Amendment and Article III of the Constitution; and 3) permitting the
> district court to decide, in the first instance and on the basis of the supplemented
> record, whether the Attorney General remains a proper defendant for the OAA
> claim and whether the additional defendant(s) Councils seek to join possess(es)
> the requisite connection to enforcement of the OAA to present a case or
> controversy justiciable under the *Ex Parte Young* doctrine.

(Dkt. 96 at 2-3.)  The Trades Councils accordingly sought and obtained this Court's permission

to file a First Amended Complaint, naming as additional defendants Tim Mason and the City of

Boise, as representatives of two separate defendant classes.  (Dkt. 103 ¶¶ 6-9.)

Defendants Wasden and Mason have moved to dismiss the First Amended Complaint for

lack of subject matter jurisdiction.  (Dkt. 106.)  With respect to Attorney General Wasden, the

defendants argue that the 2012 amendments to the 2011 OAA have eliminated all bases for

finding that he has the requisite connection with the OAA to satisfy the *Ex parte Young* doctrine.

(Memorandum in Support of Motion to Dismiss First Amended Complaint ("Defs.' Mem."),

Dkt. 106-1 at 9-11.)  With respect to Administrator Mason, the defendants argue that the claims

against him are not ripe for review.  (*Id.* at 11-19.)  As explained below, neither of these

positions has any merit, and the Motion to Dismiss should be denied.

**ARGUMENT**

I.   **ATTORNEY GENERAL WASDEN REMAINS A PROPER DEFENDANT UNDER THE *EX PARTE YOUNG* DOCTRINE IN LIGHT OF HIS RESPONSIBILITY FOR UTILIZING "ALL MEANS AT HIS COMMAND" TO ENSURE COMPLIANCE WITH THE OAA.**

Although the Eleventh Amendment generally prohibits federal courts from entertaining claims by private citizens against state governments and their officials for allegedly violating federal law, the U.S. Supreme Court has recognized that the Constitution does not bar such actions against state officers for prospective injunctive or declaratory relief under certain circumstances. *Ex parte Young,* 209 U.S. 123, 155-59 (1908).  To be a proper defendant under *Ex parte Young,* the state officer must have a "fairly direct" connection with the operation of the allegedly unconstitutional enactment, *Coalition to Defend Affirmative Action v. Brown,* 674 F.3d 1128, 1134 (9th Cir. 1996), whether that connection is the authority to bring actual enforcement actions or to "give effect" to the law in other ways.

When the plaintiff in *Los Angeles County Bar Association v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992), for example, contended that a state statute limiting the number of superior court judges in Los Angeles deprived litigants of access to the courts, the court found that the governor's "duty to appoint judges to any newly-created positions," and the secretary of state's "duty to certify subsequent elections for those positions" gave these two state officials a sufficient "specific connection to the challenged statute" to satisfy *Ex parte Young.*  As the court subsequently explained, because "[t]he statute was 'being given effect' by the officials . . . [they] were not immune from suit."  *Coal. to Defend Affirmative Action,* 674 F.3d at 1134 (quoting *Eu,* 979 F.2d at 704); *see also id.* (president of state university is proper defendant in challenge to state constitutional amendment outlawing affirmative action programs in school admission policies, since his obligation to "ensure that his employees follow [the law] and refrain from

using race as a criterion in admission decisions" gives him a "fairly direct connection" with implementation of the law).

This Court previously found that by incorporating the OAA in the Idaho RTW Act, the Legislature gave the Attorney General authority to enforce the OAA through the criminal enforcement provisions in I.C. § 44-2007, and thus made him an appropriate defendant under *Ex parte Young*. (Dkt. 67 at 9-10.)  In 2012, the Idaho Legislature amended I.C. § 44-2007 to exclude the OAA from its scope.  The Defendants assert that the 2012 amendments relieved the Attorney General of any responsibility for enforcing the OAA, and that he therefore now lacks any "connection" with the OAA sufficient to satisfy *Ex parte Young*.  (Defs.' Mem., Dkt. 106-1 at 9-11.)

This argument is completely at odds with the fact that, whatever the Legislature's intent in amending I.C. § 44-2007, it left intact another provision of the RTW Act, I.C. § 44-2009, which imposes responsibilities on the Attorney General to "give effect" to the OAA.[1]  Section 44-2009 provides (in a single sentence) that:

> It shall be the **duty** of the prosecuting attorneys of each county and of the attorney general of this state, **to investigate** complaints of violation or threatened violations of this chapter **and to prosecute** all persons violating any of its provisions, **and to take all means at their command** to ensure its effective enforcement.

---

[1]     Indeed, under accepted rules of statutory construction, it is generally presumed that lawmakers, in drafting legislation, are aware of existing statutes. *In re Transcon Lines*, 58 F.3d 1432, 1440 (9th Cir. 1995); *see also United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, (1988), and *Rodriguez v. United States*, 480 U.S. 522, 525 (1987)).  To the extent that newly enacted legislation modifies a statute, but leaves other parts intact, the conclusion to be drawn is that lawmakers made "a determined choice not to alter those unaffected statutes." *Jordan*, 915 F.2d at 628.  Moreover, where lawmakers "include[] particular language in one section of a statute but omit[] it in another section of the same Act, it is generally presumed that" the disparate inclusion or exclusion is intentional.  *Rodriguez*, 480 U.S. at 525.  Here, the Idaho Legislature placed language in both §§ 44-2007 and 44-2008 excluding the OAA  from each provision's reach, yet failed to do so in § 44-2009.  It must be presumed that this was a determined choice.

I.C. § 44-2009 (emphasis added).  Just as the reference to "this chapter" in I.C. § 44-2007 encompassed the OAA (Dkt. 67 at 9), so, too, does I.C. § 44-2009 refer to all provisions of the RTW Act, including the OAA.  Hence, I.C. §44-2009 plainly imposes on the Attorney General the "duty" to do three things regarding the OAA:  (a) "investigate complaints of violation or threatened violations" of the RTW Act; **and** (b) "prosecute all persons violating any of its provisions," **and** (c) "take all means at [his] command to ensure its effective enforcement."

Defendants construe this provision as empowering the Attorney General to "investigate complaints" or "take all means at [his] command" **only** in service to his duty "to prosecute," (Defs.' Mem., Dkt. 106-1 at 10), a construction that renders the final clause of I.C. § 44-2009 meaningless.  Yet, "[s]tatutes must be read to give effect to every word, clause and sentence." *Wright v. Willer*, 111 Idaho 474, 476, 725 P.2d 179, 181 (1986); *see also Eriksen v. Blue Cross Health Servs.,* 778 P.2d 815, 817 (Idaho 1989) (statutes should not be read to create surplusage); *Hartley v. Miller-Stephan*, 107 Idaho 688, 690, 692 P.2d 332, 334 (1984) (same).

The statute's directive that the Attorney General "take all means at [his] command to ensure [the RTW Act's] effective enforcement" is not meaningless, because the Attorney General's authority extends beyond his duty to prosecute, and includes initiating civil actions and seeking injunctions to enforce Idaho laws.  The Idaho Code expressly delegates to the Attorney General the responsibility "[t]o seek injunctive and any other appropriate relief as expeditiously as possible to preserve the rights and property of the residents of the state of Idaho," I.C. §67-1401(15).  The Code further directs him "[t]o exercise all the common law power and authority usually appertaining to the office and to discharge the other duties prescribed by law," I.C. § 67-1401(11).  The Idaho Supreme Court long ago recognized the "universal rule at common law" that "the attorney general is empowered to institute civil actions for and on behalf of the state,"

*Howard v. Cook,* 83 P.2d 208, 211 (Idaho 1938), an understanding consistent with the general view adopted by the courts. *See* 7 Am.Jur.2d Attorney General, § 11. Contrary to the Defendants' contention, recognizing that the Attorney General has these civil enforcement powers would not improperly "augment" his statutory authority (Defs.' Mem., Dkt. at 10, citing *Newman v. Lance,* 922 P2d 395, 399-400 (Idaho 1996)), but would instead give effect to the statute's plain terms.

As the Ninth Circuit clarified in *Coalition to Defend Affirmative Action,* 674 F.3d at 1134, and *Eu,* 979 F.2d at 704, a state official need not have prosecutorial enforcement authority to be an appropriate defendant under *Ex parte Young.* In *Ex parte Young* itself, the U.S. Supreme Court found the Attorney General of Minnesota to be subject to the jurisdiction of the federal courts due to his power to bring civil actions to enforce a state rate tariff. 209 U.S. at 161. Here, the Legislature relieved the Attorney General of authority to prosecute violations of the OAA as a misdemeanor under I.C. § 44-2007, but left him with the ***duty*** to "take all means" at his disposal to otherwise "ensure [the] effective enforcement" of the law, I.C. § 44-2009. The Attorney General therefore retains a "fairly direct" connection with operation of the OAA sufficient for him to remain an appropriate defendant in this case.

## II.   THE TRADES COUNCILS' CLAIMS AGAINST ADMINISTRATOR MASON ARE JUSTICIABLE UNDER ARTICLE III.

The Trades Councils have amended their complaint, adding Tim Mason, in his official capacity as Administrator of the Idaho Division of Public Works, as a defendant and as a representative of a defendant class "composed of all officials of the State of Idaho who, in their official capacity, are responsible for approving and/or issuing bid documents, specifications,

project agreements or other controlling documents for a public works construction contract and

are therefore bound by the [OAA]."  (Dkt. 103 ¶¶ 6-7.)[2]  Administrator Mason

> is authorized and empowered to provide or secure all plans and bid specifications
> for construction, alteration and repair of public works undertaken by the State of
> Idaho in a manner that complies with relevant state laws applicable to
> procurement; he is required by law to follow the procedure set forth in state law in
> soliciting bids and awarding contracts; and he is responsible for ensuring that the
> bid specifications and other procurement documents issued by the Division of
> Public Works and the contracts awarded for construction, alteration, and repair of
> public works comply with state laws applicable to procurement, including the
> [OAA].

(Dkt. 103 ¶ 6); *see also* I.C. § 67-5711.  Under the teachings of *Coalition to Defend Affirmative*

*Action* and *Eu*, by ensuring that none of the bid specifications or contract documents he approves

contain a PLA, Administrator Mason "gives effect" to the OAA in ways that satisfy *Ex parte*

*Young*.  He therefore is not immune from being sued.

In fact, Administrator Mason does not argue otherwise in his Motion to Dismiss.  Instead,

he attempts to establish that the claims against him should be dismissed because "invalidation of

I.C. § 44-2013(4) would not redress the [Trades] Council's alleged injury-in-fact" and, in his

view, the case therefore is not ripe for review.  (Defs.' Mem., Dkt. at 3-4.)

Article III of the Constitution confines the federal courts to adjudicating actual "cases" or

"controversies."  *Valley Forge Christian Coll. v. Americans United for Separation of Church and*

*State, Inc.*, 454 U.S. 464, 471 (1982).   The Defendants' arguments relate to ripeness and

standing, two separate justiciability doctrines that have emerged from Article III's "case" and

controversy" requirement.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (ripeness,

standing, mootness and federal question are four separate justiciability doctrines); *Allen v.*

---

[2]      It is precisely because Administrator Mason "does not prepare bid specifications for all
public works contracting by state agencies" (Defs.' Mem., Dkt. 106-1 at 14 n. 3) that the Trades
Councils are seeking certification of a separate defendant class composed of all of the officials
who do prepare those specifications.

*Wright*, 468 U.S. 737, 750 (1984); Erwin Chemerinsky, *A Unified Approach to Justiciability*, 22 Conn. L. Rev. 677, 678 (1991) (characterizing doctrines as separate, but complementary).

The ripeness doctrine focuses primarily on whether the matter is premature for review, and is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-808 (2003).  Depending on the facts of each case, the Ninth Circuit applies one of two tests to determine ripeness:  the *Thomas* analysis or the *Abbott Laboratories* analysis.  *See San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) (describing the standard in *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir.2000), and in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).  As discussed in greater detail below, the Trades Councils have fully satisfied the *Abbott Laboratories* ripeness analysis, which applies in this case.

Second, the standing doctrine addresses whether the plaintiff is the proper party to assert a claim in federal court, and is comprised of three elements: injury-in-fact, causation, and redressability.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  While the Defendants maintain this case falters on the redressability prong, a favorable decision will, in fact, redress the Trades Councils' injury-in-fact and they therefore have standing to pursue this case.

A.     **The Amended Complaint Presents a Ripe Case or Controversy with Respect to Administrator Mason.**

In setting out the standard for assessing ripeness, the Defendants rely on the Ninth Circuit's decision in *Thomas v. Anchorage Equal Rights Commission*.  (Defs.' Mem., Dkt. 106-1 at 12-13.)  *Thomas* explained that "[w]hether the question is viewed as one of standing or ripeness, . . . we consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too

9

'imaginary' or 'speculative' to support jurisdiction."  220 F.3d at 1139 (citations omitted).  The

court continued that to determine whether a plaintiff lodging a pre-enforcement challenge faces

"a realistic danger of sustaining direct injury," courts generally should consider "whether the

plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the

prosecuting authorities have communicated a specific warning or threat to initiate proceedings,

and the history of past prosecution or enforcement under the challenged statute."  *Id.* (citations

omitted).

　　　　The Ninth Circuit has subsequently made clear, however, that the *Thomas* standard does

not apply in a case like this one, where the plaintiffs are not the direct target of the challenged

statute.  In *San Luis & Delta-Mendota Water Authority v. Salazar,* 638 F. 3d 1163, the court

considered a pre-enforcement challenge to a provision in the Endangered Species Act ("ESA"),

16 U.S.C. §§ 1531-1544.  The ESA requires federal agencies to consult with the U.S. Fish and

Wildlife Service before undertaking action that might jeopardize endangered species, and gives

the Service authority, after consultation, to issue a "Biological Opinion," describing how the

proposed action will affect endangered species.  638 F.3d at 1167.  If the Service finds the

proposed action will have a detrimental effect, its Biological Opinion can include proposed

alternatives, along with an "Incidental Take Statement," which – if the agency follows the

Service's proposed alternatives – will insulate the agency from liability under a provision of the

ESA that prohibits "taking" endangered species.  *Id.* at 1167-68.

　　　　In *San Luis & Delta-Mendota Water Authority*, the Service issued a Biological Opinion

concerning the Bureau of Reclamation's plan for operating two large water diversion projects.

*Id*. at 1168.  Its Biological Opinion concluded the Bureau's plan would jeopardize delta smelt,

and the Service accordingly proposed a set of alternatives and issued an Incidental Take

Statement. *Id*.  The plaintiffs, growers dependent on the water resources in the affected area, claimed they would be adversely affected if the Bureau acceded to the Service's proposed alternatives. *Id*.

The plaintiff growers were not the direct target of the Service's action "giving effect" to the ESA.  It was the Service's coercive power over the Bureau that threatened to injure the plaintiffs, rather than any action either the Service or the Bureau could to take against them.  *Id*. at 1169. Similarly, in this case, neither the Attorney General nor Administrator Mason is empowered to take direct action against the Trades Councils or their members under the OAA. Instead, the Trades Councils' injury stems from the OAA's coercive effect on the public entities the Trades Councils and their members wish to convince to use PLAs.  Under these circumstances, the Ninth Circuit wrote in *San Luis & Delta-Mendota Water Authority,* the "familiar pre-enforcement analysis articulated in *Thomas* does not apply . . . ."

> Instead we apply the more general ripeness standard the Supreme Court first articulated in *Abbott Laboratories v. Gardner,* 387 U.S. 136 (1976), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99 (1977).  There, the Supreme Court held that ripeness depends on two factors:  "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."

 *Id.* at 1173.

The legal issues in this case are unaffected by the addition of Administrator Mason as a defendant.  They have already been decided by this Court and fully briefed and argued before the Court of Appeals; they are clearly "fit . . . for judicial decision." Moreover, it would definitely be a hardship to the parties to delay judicial consideration any longer, particularly since there will be no way for the Trades Councils ever to know whether a particular state or local official is declining to entertain the possibility of using a PLA because of the operation of the OAA or because, in the lawful exercise of his or her discretion, he or she determines that doing so would

not serve the purposes of applicable competitive bidding laws.  As this Court determined nearly

two years ago, "[n]othing will be gained by postponing a decision, and the public interest would

be well served by a prompt resolution of the constitutionality of [the OAA]."  (Dkt. 67 at 14,

quoting *Thomas,* 220 F.3d at 1138.)  This case therefore remains ripe for review.

### B.     The Trades Councils' Injuries Would be Redressed by a Favorable Decision in This Case.

The main thrust of Defendants' arguments is that even if the Trades Councils are

successful in challenging the OAA, they lack standing because they cannot obtain ***complete***

redress, for: (a) the litigation will leave in place the 2012 Act, which imposes identical barriers to

the Councils' ability to convince public entities to use PLAs; (b) Administrator Mason himself

would, in any event, independently "decline any request" to include a PLA in a bid specification;

and (c) the Trades Councils failed to challenge a section of the OAA that effectively bars PLAs

by prohibiting "inclusion of pre-determined wages and fringe benefit rates in bid specifications."

(Defs.' Mem., Dkt. 106-1 at 3-4.)  None of these points undermines this Court's prior decision

that the Trades Councils have standing.  (Dkt. 67 at 10-14.)[3]

---

[3]     Insofar as the Defendants appear also to suggest that the Trades Councils lack standing because they have failed to establish "injury-in-fact," the Trades Councils submit that this argument goes beyond the scope of the Ninth Circuit's remand, which is limited to determining whether Administrator Mason and any other defendants the Trades Councils seek to add "possess[] the requisite connection to enforcement of the OAA to present a case or controversy justiciable under the *Ex Parte Young* doctrine."  (Dkt. 97 at 3.)  The Ninth Circuit's limited remand thus does not reopen this entire case to relitigation, but rather limits the issues currently before this Court to those specific to whether adding Administrator Mason preserves a justiciable controversy.

When this case was originally before this Court, it determined the Trades Councils had alleged injury-in-fact with respect to the operation of the OAA (Dkt. 67 at 11-14), and in his brief to the Court of Appeals, defendant Wasden conceded the point.  (App. Ct. Dkt. 13 at 32) (acknowledging that the Trades Councils have "asserted the requisite injury-in-fact," but questioning their standing to assert the rights of the political subdivisions as third parties, a right the Trades Councils never asserted).  Addition of Administrator Mason as a defendant has

<blockquote>

1.     **The 2012 Act Has No Bearing on Redressability, Because Justiciability Depends on the Facts that Exist When the Complaint is Filed, and Plaintiffs Need Not Eliminate all Roadblocks Simultaneously.**

</blockquote>

The Idaho Legislature responded to this Court's December 22, 2011 Decision (Dkt. 67) by enacting the 2012 Act, a statute substantially identical to the OAA, and codifying it in the procurement portion of the Idaho Code (I.C. § 67-2801 *et seq.*), rather than in the RTW Act (I.C. §44-2001 *et seq.*), where the OAA is lodged.  The Defendants claim that the new legislation constitutes "an insuperable obstacle to a ripe controversy" in this case, since "the asserted injury-in-fact will continue through the operation of an independent statute."  (Defs.' Mem., Dkt. 106-1 at 16-17.)

Two well-established principles defeat this argument.  First, justiciability "depends on the facts as they exist at the time the complaint is filed," not on subsequent events that may affect redressability.  *Lujan,* 504 U.S. at 570 n. 4, 571 n. 5; *see also ACLU v. Lomax*, 471 F.3d 1010, 1015-16 (9th Cir. 2006).  In *ACLU v. Lomax,* for example, the plaintiffs challenged three rules on which the Nevada Secretary of State relied in finding their petition to place the Regulation of Marijuana Initiative on the ballot did not have the requisite number of valid signatures.  471 F.3d at 1012.  The district court enjoined two of the three challenged rules.  *Id.*  In a separate appeal, the Ninth Circuit affirmed the district court's refusal to enjoin the third challenged rule.  *Id.* at 1015.  In *Lomax,* the court raised, *sua sponte*, the question whether its decision upholding the third rule in the other appeal affected the justiciability of the plaintiffs' case, since a decision

---

nothing to do with the nature of the injury enforcement of the OAA threatens to inflict on the Trades Councils – i.e., the inability of the Councils and their members to exercise their NLRA Section 7 rights to attempt to convince public entities to enter into PLAs.  Nor has Administrator Mason presented any new facts or other grounds for ignoring the law of the case in this regard. *See Minidoka Irrigation Dist. v. DOI,* 406 F.3d 567, 573 (9th 2005) (absent extraordinary circumstances, "a court is ordinarily precluded from reexamining an issue previously decided by the same court . . . in the same case").  There is therefore no reason to relitigate injury-in-fact.

favoring the plaintiffs would no longer fully redress their injury.  *Id*. The court answered its own question:  "Because the initiative would have . . . qualified for the ballot, had the [plaintiffs] prevailed on all of [their initial] challenges, i.e., because the district court had the power to prevent the injury ***at the time the complaint was filed,*** the [plaintiffs'] injury was redressable." *Id*. at 1016 (emphasis added).

The Trades Councils filed this action on May 27, 2011, seeking to enjoin the OAA, then scheduled to take effect on July 1, 2011.  (Dkt. 1.)  The 2012 Act did not, of course, then exist. Taking the facts "as they existed when the complaint was filed," *Lujan,* 504 U.S. at 571 n. 5, this Court thus "had the power to prevent the [Trades Councils'] injury at the time the complaint was filed."  *Lomax,* 471 F.3d at 1016.  The subsequent enactment of the 2012 Act therefore has no bearing on whether the Trades Councils' alleged injury is redressable.

Second, even if there were a basis for considering the 2012 Act, the fact that the statute will remain in place when this action is resolved is immaterial, since plaintiffs "are not required to solve all roadblocks simultaneously," but are instead "entitled to tackle one roadblock at a time." *Ibrahim v. Dep't of Homeland Sec.,* 669 F.3d 983, 993 (9th Cir. 2006).  The plaintiff in *Ibrahim* sued to have her name removed from the "No-Fly" list and other terrorist watchlists.  *Id*. at 986.  The government challenged her standing, arguing that a favorable decision would not redress her injury because revocation of her student visa – a consular decision immune from judicial review – was an independent bar to her entry to the U.S.  *Id*. at 993. Although the court surmised that "removal of her name from government watchlists would make a grant of a visa more likely," it held that "'plaintiffs need not demonstrate that there is a "guarantee" that their injuries will be redressed by a favorable decision.'"  *Id.* (quoting *Wilbur v. Locke,* 423 F.3d 1101, 1108 (9th Cir. 2005)).  The court continued that, "[a]s the district court correctly observed,

'While obtaining a visa may stand as a potential obstacle to her entry into the United States, it does not completely foreclose redressability.  [Plaintiff] is not required to solve all roadblocks simultaneously and is entitled to tackle one roadblock at a time.'"  *Id.*

Here, too, a favorable decision in this case will make it more likely that the Trades Councils will subsequently prevail in a challenge to the 2012 Act.  As the court held in *Ibrahim,* however, the Trades Councils need neither challenge the 2012 Act now, nor demonstrate that they will prevail in removing that roadblock to establish that a favorable decision in this case will redress the threatened injury the OAA poses to their NLRA-protected rights.  Continued enforcement of the 2012 Act is, in short, simply irrelevant.

## 2. Invalidation of the OAA will Redress the Trades Councils' Immediate Injury, Even if Administrator Mason May Ultimately Refuse to Approve PLAs on Different Grounds.

Just as the 2012 Act has no bearing on the redressability of the Trades Councils' claims in this case, Administrator Mason's expressed distaste for PLAs does not adversely affect redressability.  (Defs. Mem., Dkt. 106-1 at 15-16.) The Trades Councils claim the OAA stands as an absolute bar to their members' ability to exercise their federally-protected right to attempt to convince officers of the State and its political subdivisions to use PLAs on their public works projects.  A decision permanently enjoining enforcement of that bar will redress that alleged injury, even though those officers might ultimately unilaterally reject the Trades Councils' entreaties.  *See Fed. Election Comm'n v. Akins,* 524 U.S. 11, 25 (1998) (in a challenge to FEC decision, the Court held "[i]f a reviewing court agrees that the agency misinterpreted the law," it will redress the respondents injury by "set[ting] aside the agency's action and remand[ing] the case – even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason").

The Fourth Circuit's opinion in *Townes v. Jarvis,* 577 F.3d 543 (4th Cir. 2009), *cert. denied,* 559 U.S. 1005 (2010), is instructive in this regard.  When the state prison parole board invoked the state's "three-strike" statute to deny parole to the plaintiff, he filed a habeas corpus petition, arguing that the board's determination was unconstitutional.  *Id*. at 546. The defendant warden argued that a decision setting aside the parole board's determination would not redress plaintiff's injury, since the board could still deny parole on other grounds.  *Id*. at 549. The court rejected this argument:

> In some cases, like the one at hand, a plaintiff will seek immediate relief from a federal court as a ***necessary antecedent*** to the ultimate relief he seeks from a different entity, like an administrative agency. In these situations, to meet the redressability prong, a party must demonstrate that a favorable decision from the federal court likely would provide him immediate relief, but ***need not demonstrate that it likely would provide him the ultimate, discretionary relief sought from the agency***.

*Id*. at 547 (emphasis added).  In the instant case, invalidation of the OAA will provide "immediate relief [to the Trades Councils] . . . as a necessary antecedent to the ultimate relief" they will seek from procurement officials.  Whether the Trades Councils can ultimately convince any state or local officials to use PLAs is a matter for another day.

The Defendants attempt to defeat this principle by asserting Administrator Mason has articulated "a categorical policy against [the] inclusion" of a PLA provision in a bid specification." (Defs.' Mem., Dkt. 106-1 at 15.)  Administrator Mason himself, however, does not go that far.  Instead, he simply states in his Second Declaration that he "can envision no circumstance under which inclusion in bid specifications subject to [Permanent Building Fund Advisory Council] approval of a requirement that a bidder become subject to a project labor agreement would be appropriate."  (Dkt. 106-2 ¶ 6.)  Administrator Mason thus holds out the possibility that he might be presented with circumstances under which inclusion of a PLA

16

requirement in bid specifications *would* be appropriate – and thus elimination of the statutory bar would eliminate a roadblock to his consideration of those circumstances.

Administrator Mason's words reflect his recognition that he does not have boundless discretion in this regard.  Thus, contrary to the Defendants' assertions, the Trades Councils *would* argue that Administrator Mason and local government procurement officials "could not adopt a categorical policy against" including PLAs in their bid specifications.  (Defs.' Mem., Dkt. at 15.)  That is, in exercising their "statutory duty [to] select the lowest responsible and responsive bidder," Administrator Mason and other state and local officials must do so in a manner that is neither arbitrary nor capricious.  *See, e.g., Beco Constr. Co. v. City of Idaho Falls*, 865 P.2d 950, 953 (Idaho 1993) (municipal governing board must exercise its discretion in selecting the "lowest responsible bidder" in a non-arbitrary fashion (citing *Seysler v. Mower,* 160 P. 262, 263 (Idaho 1916), and *Caldwell v. Vill. of Mountain Home*, 156 P. 909 (1916)).  Were Administrator Mason to take a categorical position that including a PLA in bid specifications for a public works project can *never* satisfy otherwise applicable competitive bidding requirements – and thus, in effect, acknowledge he is arbitrarily closing his mind to any evidence that might demonstrate that, in a particular instance, it would serve the interests of the State's competitive bidding statute to use a PLA crafted to address the specific needs of a specific project – it would open him to a challenge that he had exercised his discretion improperly.

In any event, the fact that the Trades Councils may never be able to convince Administrator Mason to incorporate a PLA in the bid specifications for a particular public works project in no way detracts from the fact that eliminating the OAA would remove a substantial roadblock to the Trades Councils' ability to attempt to convince officials of the state and political

subdivisions to use PLAs on their public works  projects  This case is aimed at removing one

roadblock; redressability does not depend on removing them all.  *Ibrahim*, 669 F.3d at 993.

### 3.     <u>The Trades Councils Have Challenged the OAA in its Entirety.</u>

Finally, the Defendants' arguments regarding I.C. § 44-2013(3) of the OAA – the

subsection of the OAA that prohibits incorporation of pre-determined wage and fringe benefit

rates in bid specifications for non-federally funded public works projects – is simply incorrect.

The Defendants argue that, "[f]rom the outset, the [Trades Councils have] directed [their]

preemption challenge to the Open Access Act's prohibition of project labor agreements in I.C. §

44-2013(4)," and that the Trades Councils have "never contended that a State may not prohibit

the incorporation of pre-determined wage and fringe benefit rates into non-federally funded

public works bid specifications," as prohibited by I.C. § 44-2013(3). (Defs.' Mem., Dkt. 106-1 at

18.)  Defendants reason that because PLAs typically include "wage and fringe benefit rates," a

decision that invalidates the general prohibition on use of PLAs contained in subsection (4) but

leaves intact the prohibition on predetermined wage rates in subsection (3) will fail to redress the

Trades Councils' injury.  (*Id*. at 18-19.)

This argument is based on a misreading of the Trades Councils' Complaint.  Nowhere in

either the original Complaint or the First Amended Complaint do the Trades Councils confine

their challenge to any particular subsection of I.C. § 44-2013.  Instead, the Complaint alleges that

insofar as the OAA, as codified in I.C. § 44-2013, precludes the State and its political

subdivisions from including PLAs in their bid specifications and other contract documents, the

Act is preempted by the NLRA.  That claim necessarily encompasses ***all*** aspects of the OAA that

interfere with the ability of the Trades Councils and their members to attempt to convince public

entities to use PLAs on their public works projects – whether that interference is contained in the

OAA's explicit bar on PLAs set forth in subsection (4), or in its effective bar on provisions contained in PLAs, as set forth in subsection (3).

Indeed, in describing the operative provisions of the OAA in their memorandum supporting their Motion for Summary Judgment, the Trades Councils specifically described **both** subsections (3) and (4).  (Dkt. 31-1 at 2.)  And this Court's Decision and Order granting the Trades Councils summary judgment makes no distinction between the OAA's various provisions, but instead finds the Act – ***in its entirety*** – preempted by the NLRA.  (Dkt. 67 at 22 – 26.)  In describing the OAA, this Court referenced both of these prohibitions:

> The Open Access to Work Act . . . prohibits a state agency or political subdivision from requiring that a contractor on a public works project become a party to a project labor agreement "as a condition of bidding, negotiating, being awarded or performing work on a public works project."  I.C. § 44-2013(4).  ***The Act also forbids the State and its political subdivisions from designating the wages and benefits their contractors and subcontractors will pay on public works projects.***  This prohibition prevents construction workers throughout the state from ever seeking project labor agreements with the State and its political subdivisions, effectively precluding the use of such agreements on public works projects with the State.  But Sections 8(e) and (f) of the NLRA explicitly permit employers in the construction industry to enter into prehire agreements.  29 U.S.C. § 158(e) and (f).  Idaho therefore, by enacting the [OAA], has erected an impermissible obstacle to the right to bargain project labor agreements on public works projects.

(Dkt. 67 at 23) (emphasis added). This Court's Decision, if ultimately upheld by the Ninth Circuit, will redress the Trades Councils' injury.

**CONCLUSION**

The Trades Councils respectfully submit that Defendants' Motion to Dismiss the First

Amended Complaint should be denied.

Respectfully submitted,

/s/ James M. Piotrowski
James M. Piotrowski
Alan Herzfeld
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin Street
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9200
Email: JPiotrowski@idunionlaw.com
Email: AHerzfeld@idunionlaw.com
Email: MDurand@idunionlaw.com

Terry R. Yellig
Victoria L. Bor
Esmeralda Aguilar
SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 Seventh St., N.W.
Suite 1000
Washington, D.C. 20001
Telephone: (202) 785-9300
Facsimile: (202) 775-1950
Email: yellig@shermandunn.com
Email: bor@shermandunn.com
Email: aguilar@shermandunn.com

*Attorneys for Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO, and Southwest Idaho Building and Construction Trades Council, AFL-CIO*

## CERTIFICATE OF SERVICE

I certify that I have caused a true and correct copy of the foregoing to be served upon the individuals identified below via CM/ECF filing:

Clay Smith                                    clay.smith@ag.idaho.gov
Deputy Attorney General

Judd H. Lees                                  jlees@williamskastner.com
Williams, Kastner & Gibbs, PLLC

Gregory Dickison                              gdickison@dickisonlawfirm.com
Dickison Law Office

Randall Lee Schmitz                           rschmitz@ajhlaw.com
Anderson, Julian, & Hull LLP

Courtesy copy send via e-mail to:

Scott B. Muir                                 smuir@cityofboise.org
City of Boise


This 18th  day of November, 2013


_____/s/_____

James M. Piotrowski