UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, and SOUTHWEST IDAHO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO,<br><br>Plaintiffs,<br><br>v.<br><br>LAWRENCE G. WASDEN, in his Official Capacity as ATTORNEY GENERAL FOR THE STATE OF IDAHO, TIM MASON, in his official capacity as ADMINISTRATOR OF THE DIVISION OF PUBLIC WORKS, and THE CITY OF BOISE,<br><br>Defendants. | Case No. 1:11-cv-00253-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court are: (1) Defendants Lawrence G. Wasden and Tim Mason's

Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction

**MEMORANDUM DECISION AND ORDER - 1**

(Dkt. 106), and (2) Defendant City of Boise's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) (Dkt. 110). For the reasons set forth below, the Court denies Defendants Wasden and Mason's Motion to Dismiss but grants the City's Motion.

## ANALYSIS

This case is currently before the Court on a limited remand from the U.S. Court of Appeals for the Ninth Circuit. In earlier proceedings, this Court issued a decision finding that the Open Access to Work Act (the "Open Access Act" or the "OAA) was preempted by the National Labor Relations Act. *Mem. Dec. and Order* at 24, 26, Dkt. 67. The challenged statute forbade the state of Idaho and its political subdivisions from including "project labor agreements"[1] in bid specifications and contract documents for their public works projects. This Court found that the Open Access Act's complete ban on project labor agreements interfered with employees' right to secure such agreements – a form of concerted activity protected under Section 7 of the National Labor Relations Act. Attorney General Wasden appealed this decision to the Ninth Circuit.

While this Court's decision was pending on appeal before the Ninth Circuit, the Legislature passed a nearly identical statute. This time, however, the Legislature codified it as part of Idaho's public contracting laws rather than as part of the Right to Work Act.

---

[1] Project labor agreements are a type of collective bargain agreement common in the construction industry. They are negotiated before a construction project begins between building and construction managers to govern labor relations and terms and conditions of employment on the project.

2012 Idaho Sess. Laws ch. 312 § 3, codified at I.C. § 67-2809 ("2012 Act"). In addition to enacting the 2012 Act, the Legislature also amended the original 2011 Open Access Act to remove certain enforcement powers the Act previously entrusted to the Attorney General. Based on the amendments to the 2011 Act, Attorney General Wasden argued to the Ninth Circuit that the appeal should be dismissed because the amendments eliminated any connection he had to enforcement of the Open Access Act and therefore he was no longer a proper defendant under the *Ex parte Young* doctrine.

While maintaining the Attorney General remains a proper defendant by virtue of his civil enforcement authority, Plaintiffs Idaho Building and Construction Trades Council, AFL-CIO, and Southern Idaho Building and Construction Trades Council, AFL-CIO ("Trades Councils") have filed a an amended complaint adding two defendants: Tim Mason, in his capacity as administrator for Division of Public Works, Idaho Department of Administration; and the City of Boise. *Am. Compl.* ¶¶ 6, 8, Dkt. 103. The Trades Councils also add class action allegations that name (1) Mason as the representative of a defendant class "composed of all officials of the State of Idaho who, in their official capacity, are responsible for approving and/or issuing bid documents, specifications, project agreements or other controlling documents for a public works construction contract and are therefore bound by the Anti-PLA Act," and (2) the City as the representative of a defendant class "composed of all local government entities and other political subdivisions of the State of Idaho that approve and/or issue bid documents,

specifications, project agreements or other controlling documents for public works construction contracts and are therefore bound by the anti-PLA Act." *Id.* ¶¶ 7, 9.

The Trades Council filed this Amended Complaint in response to the Ninth Circuit's limited remand. The panel order described the remand's scope as

1. allowing the Councils to amend their complaint to join additional defendant(s);

2. allowing both parties to supplement the record with any information that may bear on the justiciability of the OAA claim under the Eleventh Amendment and Article III of the Constitution; and

3. permitting the district court to decide, in the first instance and on the basis of the supplemented record, whether the Attorney General remains a proper defendant for the OAA claim and whether the additional defendant(s) Councils seek to join possess(es) the requisite connection to enforcement of the OAA to present a case or controversy justiciable under the Ex Parte Young doctrine.

*Order of USCA* at 1-2, Dkt. 96.

All defendants, Attorney General Wasden, Administrator Mason, and the City, have moved to dismiss the First Amended Complaint for lack of subject matter jurisdiction. Wasden argues that he should be dismissed from this lawsuit because the 2012 amendments to the Open Access Act eliminated any connection between the Attorney General's office and enforcement of the statute, and therefore the *Ex Parte Young* exception does not apply. Mason argues that he should be dismissed because the claims against him are not ripe for review. And the City argues it should be dismissed because the Trades Councils have not – and cannot – show that any of its alleged injuries

are traceable to City's actions; the City also joins Mason's arguments that the claims against it are not ripe for review.

## ANALYSIS

**1.     Motion to Dismiss Attorney General Wasden**

The Eleventh Amendment generally bars federal lawsuits against a state. *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  Yet, few rules are without exceptions, and in *Ex Parte Young*, 209 U.S. 123 (1908), the U.S. Supreme Court created an exception to this rule. This exception allows suits against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute. *Eu*, 979 F.2d at 704.

A plaintiff, however, is not free to randomly select a state official to sue in order to challenge an allegedly unconstitutional statute. Instead, the individual state official sued "must have some connection with the enforcement of the act." *Ex Parte Young,* 209 U.S. at 157. "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Eu*, 979 F.2d at 704.  If a challenged statute is not of the type to give rise to enforcement proceedings, a state official nonetheless may be named as a defendant under *Ex Parte Young* if he has responsibility to "give effect" to the law. *See, e.g.*, *Eu*, 979 F.2d at 704.

The Open Access Act itself contains only a private, civil enforcement provision, *see* I.C. § 44-2013(5).  At the time the Trades Councils filed their complaint, however,

the Right to Work Act contained a criminal enforcement provision that made a violation of any section of the Act, including the OAA, a misdemeanor. *See* I.C. § 44-2007. Relying on this provision, this Court found that Attorney General Wasden was an appropriate defendant under *Ex parte Young* because he had authority to enforce the Open Access Act through the Right to Work Act's criminal enforcement provision. *Mem. Dec. and Order*, pp. 9-10, Dkt. 67.

In 2012, however, the Idaho legislature amended the Right to Work Act's criminal enforcement provision to exclude the OAA from its scope:

> 44-2007. PENALTIES. Any person who directly or indirectly violates any provision of this chapter, *excluding the provisions of sections 44-2012 and 44-2013*, Idaho Code, shall be guilty of a misdemeanor, and upon conviction thereof shall be subject to a fine not exceeding one thousand dollars ($1,000) or imprisonment for a period of not more than ninety (90) days, or both such fine and imprisonment.

I.C. § 44-2007 (emphasis added). The legislature made an identical change to the Right to Work Act's general civil remedy provision, which likewise excluded the Open Access Act from its scope: "Any employee injured as a result of any violation or threatened violation of the provisions of this chapter, *excluding the provisions of section 44-2012 and 44-2013, Idaho Code*, shall be entitled to injunctive relief against any and all violators or persons threatening violations…." I.C. § 44-2008.

Pointing to the legislature's amendment eliminating criminal penalties for violations of the OAA, Wasden now argues that the *Ex Parte Young* exception no longer applies because the amendment stripped him of all authority to enforce the Act. The Court is not convinced.

While the legislature may have intended to eliminate any connection between the Attorney General and enforcement of the Open Access Act, they left one thread tying the two together: section 44-2009. This section imposes a duty on the prosecuting attorneys of each county and the Attorney General "to investigate complaints of violation or threatened violations of [the Right to Work Act] and to prosecute all persons violating any of its provisions, and *to take all means* at their command to ensure [the Right to Work Act's] effective enforcement." I.C. § 44-2009. The "means" at the Attorney General's disposal include the power to initiate civil enforcement actions and seek injunctions to enforce Idaho laws. *See* I.C. § 67-1401(5) (empowering the Attorney General with the ability to seek injunctive relief and any other appropriate relief "to preserve the rights and property of the residents of the state of Idaho").

The language of section 44-2009 is broad. It plainly imposes a duty on the Attorney General to take all means at his command to ensure the effective enforcement of the Right to Work Act. And there is no dispute that the Right to Work Act encompasses the Open Access Act. Thus, by logical extension, the plain language of section 44-2009 empowers the Attorney General to enforce or give effect to the Open Access Act beyond prosecuting criminal violations, i.e., to take all means at his command – which includes the power to initiate civil enforcement actions – to ensure the effective enforcement of the Open Access Act. This duty provides the requisite connection between Wasden and the Open Access Act for purposes of *Ex Parte Young* jurisdiction.

This conclusion is buttressed by the fact that the legislature amended section 44-2007 (imposing criminal penalties), and section 44-2008 (giving the employees the right to seek civil remedies), to specifically exclude the OAA from their scope but did not include similar language with regard to section 44-2009. Under accepted rules of statutory construction, it is generally presumed that lawmakers, in drafting legislation, are aware of existing statutes. *In re Transcon Lines*, 58 F.3d 1432, 1440 (9th Cir. 1995). And when "newly enacted legislation modifies or repeals some statutes but leaves other statutes intact, the conclusion to be drawn is that [the legislature] made a determined choice not to alter those unaffected statutes." *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990). Moreover, when the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposefully in the disparate inclusion or exclusion." *Rodriguez v. United States*, 480 U.S. 522, 525 (1987)). In other words, by specifically excluding the Open Access Act from the criminal and employee remedy provisions of sections 44-2007 and 2008, but leaving the Attorney General's enforcement provisions of section 44-2009 untouched, the legislature signaled that it was a determined choice not to exclude the Open Access Act from section 44-2009.

Wasden disagrees. He maintains that section 44-2009 empowers him to "investigate complaints of violation or threatened violations of [the Right to Work Act]" or "take all means at [his] command" only in service of his duty "to prosecute." But that is not what section 44-2009 says. Section 44-2009 does not limit the Attorney General to

investigating only complaints of *criminal* violations. Nor does it limit the Attorney General to taking all means at his command only to ensure effective *criminal* enforcement of the Act. Reading section 44-2009 as recognizing the Attorney General's civil enforcement powers does not improperly augment his statutory authority as Wasden would suggest; instead, its gives effect to the statute's plain terms. Wasden therefore remains a proper defendant under *Ex Parte Young*.

**2.     Motion to Dismiss Administrator Mason**

The Trades Councils have amended their complaint to add Tim Mason, in his official capacity as Administrator of the Idaho Division of Public Works, as a defendant and as a representative of a defendant class "composed of all officials of the State of Idaho who, in their official capacity, are responsible for approving and/or issuing bid documents, specifications, project agreements or other controlling documents for a public works construction contract and are therefore bound by the [Open Access Act]. *Am. Compl.*, ¶¶ 6-7, Dkt. 103.

As the person "authorized and empowered to provide or secure all plans and bid specifications for construction, alteration and repair of public works undertaken by the State of Idaho" in a manner that complies with all relevant state laws, and as the person responsible for ensuring that all bid specifications and other procurement documents issued by the Division of Public Works comply with state law, I.C. § 67-5711, Administrator Mason "gives effect" to the Open Access Act in ways that satisfy *Ex Parte Young*. He is therefore not immune from being sued.

Indeed, Administrator Mason does not argue otherwise. Instead, he maintains that the claims against him should be dismissed because invalidation of the subsection 44-2013(4) of the Open Access Act would not redress the Trades Council's alleged injury-in-fact and therefore, in his view, the case against him is not ripe for review. Mason also argues that, as a precursor to a ripe controversy, the Trades Councils would have to be "amenable" to configuring any project labor agreement to exclude any wage and fringe benefits rates because section 44-2013(3) prohibits the inclusion of such benefits in bid specifications, and the Trades Councils have not challenged this prohibition.

### A. *Standing and Ripeness*

Article III of the Constitution confines federal courts to adjudicating actual "cases" or "controversies." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). To satisfy Article III's "case" and "controversy" requirement, a plaintiff must have standing to bring the complaint, and the claims asserted must be "ripe for review." *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Mason's arguments raise both standing and ripeness issues.

Article III standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). To establish standing under Article III, the party in question must prove: (1) an injury-in-fact that is concrete and particularized, and actual or imminent; (2)

a fairly traceable causal connection between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood that the relief sought will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 55 5, 560–61 (1992).

As a corollary to the standing requirement, a claim must be ripe for review. The "ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Indeed, ripeness can be understood as standing on a timeline. *Id.* "And, in measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." *Id.* (internal quotation marks omitted).

To determine whether a case is ripe, courts consider two factors: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).

### B. *Redressability and Mason's Discretion*

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298. For example, a party has a standing to challenge a statute that subjects him to a threat of prosecution. *Planned Parenthood of Idaho*, 376 F.3d at 916-17. But even when a regulation is not directed at a party, it can be "an object" of government regulation so long as the "injury alleged, in

addition to being actual and personal," is caused by the challenged action and is "likely to be redressed by a favorable decision." *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992). (internal quotation marks omitted). A party seeking to invoke the court's powers must demonstrate that more than "speculative inferences" connect the injury to the challenged action. *Id.*

Although the Open Access Act cannot be directly enforced against the Trades Councils, this Court found in an earlier decision that operation of the Act could still result in a primary injury to the Trades Councils by discouraging political subdivisions from negotiating a project labor agreement they would otherwise seek. *Memorandum Decision and Order* at 12, Dkt. 67. Administrator Mason contends, however, that invalidating the Act will not redress the Trades Councils' injury because, in his view, the use of a project labor agreement in a public works project would always conflict with his duty to select the lowest responsible and responsive bidder, and he would therefore never consider using a project labor agreement in a public works project.

The Supreme Court addressed and rejected a similar argument in *FEC v. Akins*, 524 U.S. 11, 25 (1998). In *Akins*, the plaintiffs were voters who challenged the FEC's conclusion that under the Federal Election Campaign Act of 1971, the American–Israel Political Action Committee ("AIPAC") was not a "political committee." Had the FEC reached a contrary determination, it would have given rise to various recordkeeping and disclosure requirements. The FEC argued that plaintiffs could not establish redressability because even if the Supreme Court reversed the FEC's decision, the FEC could still

exercise its discretion and decline to pursue an enforcement action against AIPAC. Rejecting this argument the Court held that there was standing, because

> those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground. If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's decision and remand the case—even though the agency ... might later, in the exercise of its lawful discretion, reach the same result for a different reason.[2]

*Id.* at 24.

The Supreme Court's reasoning in *Akins* applies equally here. A decision invalidating the Act would not stop Mason from refusing each and every time to include a project labor agreement in a bid specification for a public works project. Even so, this future contingency does not destroy redressability for the Trades Councils' claim challenging the Open Access Act. Indeed, *Akins* demonstrates that redressability does not require the Trades Councils to establish that Mason will exercise his discretion in any particular fashion in the future, or that invalidation of the Open Access Act will increase measurably the likelihood of their securing a project labor agreement requirement in a bid specification on a public works project. Rather, the Trades Councils need only show that they are able and ready to seek the opportunity to negotiate a project labor agreement for

---

[2] Although these statements were made specifically in the context of the causation requirement, the Court applied the identical analysis to the redressability question. *Akins*, 524 U.S. at 25 ("[f]or similar reasons, the courts in this case can 'redress' 'injury in fact'").

a public works project, but an allegedly unconstitutional law prevents them from doing so.

Right now, inclusion of a project labor agreement in a bid specification for a public works project would be illegal under the Open Access Act. Eliminating the Open Access Act is therefore a necessary antecedent to the ultimate relief the Trades Councils seek – use of project labor agreements on public works projects. Therefore, even if the Trades Councils cannot show that Administrator Mason will ever accept their members' entreaties to use a project labor agreement on a public works project, it has alleged an injury that still satisfies the redressability prong.

### C. *Redressability and the 2012 Act*

As noted above, the Idaho Legislature responded to this Court's December 22, 2011 Decision (Dkt. 67) by enacting the 2012 Act, a statute substantially identical to the Open Access Act. Mason claims that the new legislation constitutes "an insuperable obstacle to a ripe controversy" in this case, since "the asserted injury-in-fact will continue through the operation of an independent statute." *Defs.'Mem.*, pp. 16-17, Dkt. 106-1.

This argument fails because of two well-established principles. First, standing depends on the facts "as they exist at the time the complaint was filed." *Lujan*, 504 U.S. at 569 n. 4. When the Trades Councils filed this lawsuit in May 2011, the 2012 Act did not yet exist. Thus, the Court had the power to prevent the Trades Councils' injury at the time the complaint was filed, and the 2012 Act therefore has no bearing on redressability. *See, e.g., ACLU v. Lomax*, 471 F.3d 1010, 1015-16 (9th Cir. 2006).

Second, even if the Court had reason to consider the 2012 Act, it would not completely foreclose redressability because the Trades Councils do not have to surmount every obstacle simultaneously. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993 (9th Cir. 2006) illustrates this principle. In *Ibrahim*, the plaintiff sought to have her name removed from a "No-Fly" List, so she could visit the United States. The government argued, however, that removing her name from the "No-Fly" List would not redress her injury because her failure to obtain a visa served as an independent bar to her traveling to the United States. Rejecting the government's argument, the Ninth Circuit acknowledged that obtaining a visa could stand as a potential obstacle to the plaintiff's entry into the United States but held this did not completely foreclose redressability: "Plaintiff is not required to solve all roadblocks simultaneously and is entitled to tackle one roadblock at a time." *Id.*

Likewise, the Trades Councils need not simultaneously topple every obstacle impeding their ability to negotiate project labor agreements for public works projects. The Trades Councils may seek to challenge the 2012 Act in a subsequent lawsuit. But, in the meantime, the existence of the 2012 Act does not completely foreclose redressability with respect to the 2011 Open Access Act, and the Trades Councils are entitled to continue their challenge to the 2011 Act.

D.  *Redressability and Section 44-2013(3)*

Defendants' final argument regarding I.C. § 44-2013(3) of the Open Access Act – the subsection of the OAA that prohibits incorporation of pre-determined wage and fringe benefit rates in bid specifications for non-federally funded public works projects – is equally unavailing. Defendants argue that the Trades Councils do not challenge section 44-2013(3), and because project labor agreements typically contain pre-determined wage and fringe benefits, invalidation of the project labor agreement prohibition will not redress the Trades Councils' injury. But the Trades Councils challenge every subsection of the Open Access Act, including the pre-determined wage and fringe benefit prohibition. Because this argument by Mason is premised on a misreading of the Trades Councils' Complaint, it does not affect redressability.

3.  **Motion to Dismiss the City of Boise**

The City of Boise argues that the claims against it should be dismissed because the Trades Councils cannot establish that their alleged injury is traceable to the actions of the City. "To show causation, the plaintiff must demonstrate a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008).

The Trades Councils, however, do not attempt to assert a direct cause of action against the City and do not seek any affirmative relief directly from the City. Instead, they have named the City as a party because, they claim, joinder is necessary under

Federal Rule of Civil Procedure 19(a)(1) for the "sole purpose" of effecting complete relief between the parties. The Trades Councils fear that political subdivisions that choose to use a project labor agreement on a public works project will face exposure to substantial liability because nothing will preclude "interested parties" under section 44-2013(5) from initiating state court actions to enforce the OAA, as state courts are not automatically bound by the judgments of federal district courts. The Trades Councils therefore seek to ensure that the City is bound by any future judgment invalidating the Open Access Act. Otherwise, the Trades Councils argue, they will "continue to be injured by the chilling effect of the OAA on their ability to exercise their Section 7 right to attempt to convince political subdivisions to use [project labor agreements] on their major public works projects." *Pls' Resp.* at 9, Dkt. 113.

A party "can be joined under Rule 19 in order to subject it, under principles of res judicata, to the 'minor and ancillary' effects of a judgment" – even if no present party has a viable cause of action against the party to be joined. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1079 (9th Cir.2010) (*Peabody II*) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982)). In *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005), a precursor to the Court's decision in *Peabody II*, the Ninth Circuit considered whether the Navajo Nation was a necessary party to an EEOC action brought against Peabody under Title VII, challenging discriminatory hiring provisions in coal-mining leases executed between Peabody and the Navajo Nation. *Id.* at 776. The *Peabody* court held that, although the EEOC had no cause of action against the Navajo

Nation, it was a necessary party under Rule 19(a) because to hold otherwise would permit the Navajo Nation to collaterally attack any injunctive relief ordered by the court. *Id.* at 780.

*Peabody* represents "a narrow exception to the causation and traceability requirements of Article III standing." *Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114 (9th Cir. 2013). And this case does not warrant the application of this narrow exception. In *Peabody*, the Navajo Nation was a party to the allegedly unlawful lease agreement; thus, there was a very real possibility that the Navajo Nation would attack the injunction. In this case, by contrast, the possibility that some third party might sue the City for entering into a project labor agreement if the Open Access Act were declared unconstitutional is too remote to warrant dragging the City into this lawsuit. Adoption of the Trades Councils' argument would also establish the broad precedent that any entity or individual affected by a decision declaring a state statute constitutes a necessary party. Because the Trades Councils lack standing with respect to the City of Boise, the Court will dismiss the City from this action.

## ORDER

**IT IS ORDERED that:**

1. Defendants Lawrence G. Wasden and Tim Mason's Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction (Dkt. 106) is DENIED.

2. Defendant City of Boise's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) (Dkt. 110) is GRANTED.



DATED: July 15, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court